54 F.3d 555
 40 ERC 1777, 63 USLW 2756, 25 Envtl.
L. Rep. 20,899,
26 UCC Rep.Serv.2d 734,
Prod.Liab.Rep. (CCH) P 14,216
 TAYLOR AG INDUSTRIES, a general partnership; Salt River
Valley Farms, a general partnership; 5J Farms, a
general partnership, Plaintiffs-Appellants,
v.
PURE-GRO, a California corporation; Nor Am Chemical Co.;
Miles Inc., an Indiana corporation (formerly
Mobay); Black & White Corporations,
I-V, Defendants-Appellees.
 No. 93-16852.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 15, 1995.
Decided April 24, 1995.
 
 William J. Downey, Rake & Downey, Phoenix, AZ, and Patti A. Goldman, Public Citizens Litigation Group, Washington, DC, for plaintiffs-appellants.
 James L. Moore, Holtzman, Urquhart, Bayko & Moore, Houston, TX, for defendant-appellee, Miles Inc.
 Charles J. Muchmore, Muchmore & Wallwork, Phoenix, AZ, for defendant-appellee, Nor Am Chemical Co.
 April V. Pearson, Pure-Gro Co. Law Dept., Brea, CA, and Francis J. Balint, Jr., Bonnett, Fairbourn, Friedman, Hienton, Miner & Fry, P.C., Phoenix, AZ, for defendant-appellee, Pure-Gro Co.
 Lawrence S. Ebner, McKenna & Cuneo, Washington, DC, argued on behalf of appellees and on brief for the amicus, Nat'l Agricultural Chemicals Assoc.
 Appeal from the United States District Court for the District of Arizona.
 Before: CHOY, CANBY, and T.G. NELSON, Circuit Judges.
 CHOY, Circuit Judge:
 
 
 1
 Taylor AG Industries, Salt River Valley Farms, and 5J Farms (collectively "Appellants") appeal the district court's grant of summary judgment on their state law tort and contract claims. The district court granted summary judgment on the ground that the preemption provision of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. Sec. 136v(b), preempts all of Appellants' claims. We affirm.I
 
 
 2
 Appellants are partnerships engaged in cotton farming in Arizona and sued to recover for damage to their cotton crop. The damage allegedly resulted from the application of a mixture of two defoliant chemicals, DROPP 50WP ("DROPP"), manufactured by Nor Am Chemical Company ("Nor Am"), and DEF-6, manufactured by Miles Inc. ("Miles"), formerly Mobay Corporation.
 
 
 3
 The labels on the two defoliants and the 1991 DROPP Product Guide ("Product Guide") recommended a mixture of the two chemicals to improve defoliation in the conditions present in Arizona. However, there was a discrepancy in the dosage rates indicated in the DROPP label and the DEF-6 label: The DROPP label and the Product Guide recommended a maximum amount of DROPP to be applied with DEF-6 that was four times higher than the maximum amount recommended by the DEF-6 label. The exact language on both labels was approved by the United States Environmental Protection Agency ("EPA").
 
 
 4
 Appellants allegedly combined the two chemicals in accordance with the instructions provided on the labels and the Product Guide and applied the mixture to their fields. Rather than defoliating the leaves from the cotton plants, the chemicals allegedly prevented some bolls from opening and producing cotton for harvest. As a result, the Appellants claim to have suffered, among other damage, a lower-than-anticipated yield of cotton.
 
 
 5
 Appellants purchased the two defoliant chemicals in 1991 from Pure-Gro ("Pure-Gro"), a retail seller and distributor of agricultural chemicals. An alleged discussion took place between Appellants' representative and Pure-Gro's representative, Scott Stagner ("Stagner"), regarding the use of the two products. Appellants allege that during this discussion, Stagner directed them to the Product Guide for dosage information. As a result of their reliance on Stagner's representation, Appellants claim to have suffered the damage.
 
 
 6
 In 1992, Appellants filed an action against Nor Am and Miles (collectively "Manufacturers") and Pure-Gro for the damage caused to their cotton crop. In their third amended complaint,[1] Appellants asserted five causes of action: (1) strict liability against the Manufacturers and Pure-Gro for failing to provide adequate warning; (2) negligent failure on the part of the Manufacturers to test and design the chemicals for the condition in which Appellants used them; (3) breach of express warranty against Pure-Gro; (4) breach of implied warranty of merchantability against Pure-Gro; and (5) breach of implied warranty of fitness for a particular purpose against Pure-Gro.
 
 
 7
 In January 1993, the Manufacturers, joined by Pure-Gro, moved for summary judgment on the ground that 7 U.S.C. Sec. 136v(b) preempts all of Appellants' claims. On August 24, 1993, the district court granted the motion for summary judgment with respect to all claims. The district court held that Sec. 136v(b) expressly preempts the strict liability and negligent testing claims because they require a showing that the EPA-registered labels were inadequate and suggest that an alternate labeling system is warranted. Furthermore, the district court held that Appellants' breach of implied warranty claims were preempted because implied warranties arise by operation of state law to impose labeling requirements indirectly. Finally, the district court dismissed Appellants' claim against Pure-Gro for breach of express warranty because there was no evidence establishing that Stagner made any statements about the use of the chemicals that were inconsistent with or went beyond either the chemicals' labels or the Product Guide. Appellants timely filed a notice of appeal on September 22, 1993. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 
 II
 
 8
 Appellants contend that the district court erred by granting summary judgment on their various state law claims. We review de novo the district court's grant of summary judgment, limiting our review to the record presented to the district court at the time of summary judgment. Lippi v. City Bank, 955 F.2d 599, 604 (9th Cir.1992). Viewing the evidence in the light most favorable to Appellants, we must determine whether there is any genuine issue of material fact. Id. In opposing summary judgment, Appellants have the burden of putting forth evidence sufficient to establish a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2253, 91 L.Ed.2d 265 (1986).
 
 III
 
 9
 FIFRA, 7 U.S.C. Secs. 136-136y, is a comprehensive federal statute which regulates pesticide use, sales, and labeling, and grants enforcement authority to the EPA. Wisconsin Pub. Intervenor v. Mortier, 501 U.S. 597, 601, 111 S.Ct. 2476, 2479-80, 115 L.Ed.2d 532 (1991). FIFRA expressly prohibits states from imposing "any requirements for labeling or packaging in addition to or different from those required" under it. 7 U.S.C. Sec. 136v(b). Appellants contend that the Sec. 136v(b) preemption provision applies to only positive state enactments and not to state tort claims. Therefore, they argue that the district court erred by dismissing their failure to warn claim against both the Manufacturers and Pure-Gro on the basis of preemption.
 
 
 10
 The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Congressional intent determines whether a federal statute preempts state law. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137-38, 111 S.Ct. 478, 481-82, 112 L.Ed.2d 474 (1990). Where Congress has included an express preemption provision in an act, there is no need to divine an implied congressional intent regarding preemption from other provisions in the act. Cipollone v. Ligget Group, Inc., --- U.S. ----, 112 S.Ct. 2608, 2618, 120 L.Ed.2d 407 (1992).
 
 
 11
 The Supreme Court has addressed the issue of preemption in the context of cigarette labeling in Cipollone and has indicated that its analysis in Cipollone should be applied to FIFRA preemption determinations. See King v. E.I. Dupont De Nemours & Co., 996 F.2d 1346, 1349 (1st Cir.), cert. dismissed, --- U.S. ----, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993). The Supreme Court vacated the judgments in Papas v. Upjohn Co., 926 F.2d 1019 (11th Cir.1991) ("Papas I "), vacated & remanded sub nom. Papas v. Zoecon Corp., --- U.S. ----, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992), and Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc., 959 F.2d 158 (10th Cir.) ("Arkansas-Platte I "), vacated & remanded sub nom. Arkansas-Platte & Gulf Partnership v. Dow Chem. Co., --- U.S. ----, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992), and remanded for consideration in light of Cipollone. King, 996 F.2d at 1349.
 
 
 12
 In Cipollone, the Supreme Court held that the preemption provision of the Public Health Cigarette Act of 1969 ("1969 Cigarette Act"), 15 U.S.C. Secs. 1331-1340, prevents states from imposing tort liability on the basis of inadequate labeling. --- U.S. at ---- - ----, 112 S.Ct. at 2619-21. The preemption provision of the 1969 Cigarette Act states:
 
 
 13
 No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter.
 
 
 14
 15 U.S.C. Sec. 1334(b). The Supreme Court reasoned that "[t]he phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law.... The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." Cipollone, --- U.S. at ----, 112 S.Ct. at 2620.
 
 
 15
 There is no notable difference between the language in the 1969 Cigarette Act and the language in FIFRA. Section 136v(b) states that "[s]uch State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. Sec. 136v(b). Like the preemption provision of the 1969 Cigarette Act, Sec. 136v(b) uses the broad term "requirements" to preempt state actions for damages. The Seventh Circuit has noted that "[n]ot even the most dedicated hair-splitter could distinguish these statements. If common law actions cannot survive under the 1969 cigarette law, then common law actions for labeling and packaging defects cannot survive under FIFRA." Shaw v. Dow Brands, Inc., 994 F.2d 364, 371 (7th Cir.1993).
 
 
 16
 We look to Cipollone for guidance in order to determine whether Appellants' failure to warn claim is preempted. The Supreme Court carefully examined each common law claim in order to determine whether the particular claim was preempted. Cipollone, --- U.S. at ----, 112 S.Ct. at 2621. FIFRA preempts a common law claim if the legal duty that forms the basis for the claim imposes a state labeling requirement that is different from or in addition to the requirements imposed by FIFRA. See id.
 
 
 17
 Appellants' argument essentially boils down to a claim that the Manufacturers' product labels, which have been approved by the EPA in accordance with FIFRA, inadequately warned Appellants of the hazards associated with the defoliants. In order to prevail on their failure to warn claim, Appellants would have to prove that the labels contained insufficient information and that different labels were warranted. Awarding damages on the Appellants' claim would therefore be tantamount to allowing the state of Arizona to regulate pesticide labeling indirectly, an action which is specifically prohibited by Sec. 136v(b).
 
 
 18
 For this reason, seven circuits have held that Sec. 136v(b) preempts failure to warn claims based on inadequate labeling. See Bice v. Leslie's Poolmart, Inc., 39 F.3d 887, 888 (8th Cir.1994); MacDonald v. Monsanto Co., 27 F.3d 1021, 1024-25 (5th Cir.1994); Worm v. American Cyanamid Co., 5 F.3d 744, 747 (4th Cir.1993) ("Worm II "); King, 996 F.2d at 1349; Shaw, 994 F.2d at 371; Papas v. Upjohn Co., 985 F.2d 516, 518 (11th Cir.) ("Papas II "), cert. denied, --- U.S. ----, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993); Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc., 981 F.2d 1177, 1179 (10th Cir.) ("Arkansas-Platte II "), cert. denied, --- U.S. ----, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993).
 
 
 19
 Appellants attempt to distinguish Cipollone by pointing out that FIFRA's labeling provision, unlike the cigarette labeling requirement, does not mandate precise language to be used in the labels. They argue that manufacturers, who are not restricted by specific language requirements, may devise pesticide labels to avoid both state tort liability and comply with FIFRA.
 
 
 20
 Appellants, however, fail to represent accurately the rigorous label-approval process under FIFRA. Although FIFRA does not prescribe the exact contents of labels, manufacturers are not free, as Appellants suggest, to create pesticide labels in any manner they choose. Rather, under 7 U.S.C. Sec. 136a(c)(5), the EPA approves each label only after a careful review of the product data and the draft label. FIFRA cannot impose a specific language requirement for warning labels like the 1969 Cigarette Act because FIFRA regulates a wide variety of products that cannot be serviced by a single statement. This fact was made clear in the proposed new rules for FIFRA in 1984:
 
 
 21
 Because it is impossible to prescribe ... exact statements for all combinations of ingredients, formulation types, and uses, the statements would be considered the minimum acceptable ones, and not inclusive of all statements that might be required. The need for additional precautionary statements or modified ones would be determined on a case-by-case basis.
 
 
 22
 Labeling Requirements for Pesticides and Devices, 49 Fed.Reg. 37,960, 37,965 (1984). Thus, Appellants' proffered distinction fails.
 
 
 23
 Next, Appellants argue that the construction of Sec. 136v indicates that preemption of state law extends only to those states that actively regulate the sale or use of any federally registered pesticide. See 7 U.S.C. Sec. 136v(a), (b). Specifically, Appellants contend that "[s]uch state" in the preemption provision, Sec. 136v(b), refers only to states described in Sec. 136v(a) which have "regulate[d] the sale or use of any federally registered pesticide or device...." This argument has not been well-received. The First Circuit has held that Sec. 136v(a) "is a grant of authority to the states to regulate the 'sale or use' of pesticides, not a limitation upon the preemptive effect of subsection (b)." King, 996 F.2d at 1349. The Eleventh Circuit, in agreement, has held that "[c]ommon law damages awards are one form of state regulation and, as such, are 'requirements' within the meaning of section 136v." Papas II, 985 F.2d at 518. We likewise find that Sec. 136v(a) does not limit the preemption scope of Sec. 136v(b).
 
 
 24
 Appellants next contend that liability should be imposed upon the Manufacturers for failure to warn arising from alleged deficiencies in advertisements, point-of-sale warnings, and other materials distributed in connection with a sale.[2] The Eleventh Circuit squarely addressed this issue and dismissed a claim for inadequate point-of-sale signs because "any claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging." Id. at 519. In accordance with the Eleventh Circuit, we hold that Appellants' claim for inadequate point-of-sale warnings is preempted because their claim is premised ultimately upon the inadequacy of the product label.
 
 
 25
 Finally, Appellants argue that the EPA is performing its duties inadequately and invite this court to remedy the situation. Analyzing the performance of an expert regulatory agency such as the EPA, however, is not a function of this court, and furthermore, is irrelevant to the preemption analysis. See Mattoon v. City of Pittsfield, 980 F.2d 1, 5 (1st Cir.1992) (separation of powers precludes the courts from second-guessing congressional solutions); Kennan v. Dow Chem. Co., 717 F.Supp. 799, 810 (M.D.Fla.1989) ("Whether that federal regulatory agency carries out its function based on all available and necessary information is ... irrelevant to a preemption inquiry."). We therefore decline the Appellants' invitation: "[I]t is for the EPA Administrator, not a jury, to determine whether labelling and packaging information is incomplete or inaccurate, and if so what label changes, if any, should be made.... We think FIFRA leaves states with no authority to police manufacturers' compliance with the federal procedures." Papas II, 985 F.2d at 519.
 
 
 26
 In accordance with the decisions of the Supreme Court and the First, Fourth, Fifth, Seventh, Eighth, Tenth, and the Eleventh Circuits, we conclude that Appellants' failure to warn claim against the Manufacturers and Pure-Gro[3] is preempted to the extent that it requires additional or different information on the Manufacturers' labels.
 
 IV
 
 27
 Appellants contend that the district court erred when it granted summary judgment against their negligent testing claim. The Supreme Court in Cipollone held that a negligent testing claim based on a failure to warn theory is preempted because such a claim would "require a showing that [the Manufacturers'] advertising or promotions should have included additional, or more clearly stated, warnings...." --- U.S. at ----, 112 S.Ct. at 2621. Claims for negligent testing that are based solely upon the Manufacturers' testing or research practices, not related to advertising or promotion, however, are not preempted by FIFRA. Id. at ----, 112 S.Ct. at 2622.
 
 
 28
 The only evidence that Appellants offer in support of their assertion that the Manufacturers failed to test adequately the defoliants is the allegedly inadequate product labels themselves. In short, the core of Appellants' claim is that the Manufacturers failed to mark accurately their labels. Such an allegation requires a showing that the labels should have included additional warnings and is preempted by FIFRA.[4]
 
 
 29
 Our conclusion is supported by the Fourth Circuit. The plaintiffs in Worm II, rather than allege that the product, itself, was functioning improperly, asserted that the defendant company made false representations about the product. The Fourth Circuit concluded that the plaintiffs' allegation, in essence, amounted to a claim of inadequate labeling and held that FIFRA preempted the plaintiffs' negligent testing claim. Worm II, 5 F.3d at 748.
 
 V
 
 30
 Appellants also appeal the district court's dismissal of their claims that Pure-Gro, the distributor, breached express and implied warranties. Appellants first assert that FIFRA's preemption of labeling requirements applies only to manufacturers. We disagree. Where as here, the distributor's liability is essentially predicated upon the language in the manufacturer's label, we apply FIFRA's preemption provision equally to manufacturers and distributors.
 
 
 31
 * Appellants argue that FIFRA does not preempt their express warranty claim because express warranties do not constitute requirements imposed by state law but rather are contractual requirements made by the warrantor. In Cipollone, the four Justice plurality concluded that a federally-mandated warning label does not preempt a state law remedy for breach of a contractual commitment that is voluntarily undertaken: "[C]ommon understanding dictates that a contractual requirement, although only enforceable under state law, is not 'imposed' by the state, but rather is 'imposed' by the contracting party upon itself." --- U.S. at ---- n. 24, 112 S.Ct. at 2622 n. 24. In order to determine whether Appellants' express warranty claim is preempted, we focus on "whether the claim would require the imposition under state law of a requirement or prohibition [pertaining to any federally registered pesticides] with respect to [labeling or packaging]." Id. at ----, 112 S.Ct. at 2622.
 
 
 32
 Appellants allege that Pure-Gro made an express warranty by directing them to the Product Guide for DROPP and DEF-6 mixing instructions. There is no evidence that Pure-Gro made any warranty that varied from the Manufacturers' labels and the Product Guide.[5] Thus, Pure-Gro's liability for such an express warranty would be predicated upon a duty to provide information in addition to or different from that required by FIFRA. Imposing liability would circumvent the purposes of FIFRA by allowing states to require indirectly the dissemination of information that is outside the scope of the Manufacturers' labels.
 
 
 33
 Appellants argue that imposing liability for a breach of an express warranty would further FIFRA's purposes by restricting a distributor's product representations to its customers. While Appellants' argument is valid in cases where distributors make warranties outside the scope of the manufacturers' labels, their argument fails where the distributor's statements are based solely upon the manufacturers' labels. Requiring the distributor to research the accuracy of each manufacturer's label would place an undue burden on the distributor who is the least likely to have access to such information.
 
 
 34
 We affirm the district court's ruling that Appellants' express warranty claim is preempted. Appellants present no evidence establishing that Stagner made any statements that were inconsistent with or went beyond the labels or the Product Guide. Our holding, however, does not extend to all express warranty claims made under FIFRA. FIFRA does not preempt claims for breach of an express warranty that fall outside the scope of the manufacturer's label; states may regulate the sale and use of pesticides under 7 U.S.C. Sec. 136v(a), but their regulatory powers must be limited strictly to sale and use and may not extend to pesticide labeling, 7 U.S.C. Sec. 136v(b).
 
 B
 
 35
 The district court found that Appellants' claims for breaches of implied warranties were preempted by FIFRA. The district court relied on the fact that implied warranties of merchantability and fitness for a particular purpose arise by virtue of state law and that establishment of their breach requires a showing that the labels at issue contained inadequate warnings.
 
 
 36
 Appellants challenge the district court's decision, asserting that implied warranties are not labeling or packaging requirements and thus are not preempted by FIFRA. We disagree. First, in order to prove that Pure-Gro breached implied warranties, Appellants only presented evidence that Pure-Gro should have supplied information in addition to or different from the Manufacturers' labels. "[T]o the extent the implied warranty claim depends upon inadequacies in labelling or packaging, FIFRA section 136v pre-empts the claim." Papas II, 985 F.2d at 520.
 
 
 37
 Arizona has codified the implied warranty of merchantability in Ariz.Rev.Stat.Ann. Sec. 47-2314 (1994) and the implied warranty for fitness for a particular purpose in Ariz.Rev.Stat.Ann. Sec. 47-2315 (1994). The implied warranty of merchantability, which warrants that goods are "adequately contained, packaged, and labeled as the agreement may require," is similar to the Florida warranty considered by the Eleventh Circuit in Papas II. The Eleventh Circuit, which is the only circuit to have addressed the applicability of FIFRA's preemption provision to implied warranty claims, held that "an implied warranty is a requirement imposed under state law and is pre-empted by FIFRA." Papas II, 985 F.2d at 519.
 
 
 38
 Although the Eleventh Circuit did not address a claim for a breach of an implied warranty of fitness for a particular purpose, a similar analysis can be applied. If Pure-Gro were to be liable for breach of an implied warranty of fitness for a particular purpose, that liability would be imposed by a state law requirement rather than by any voluntary action on the part of Pure-Gro. See Id. at 520. Therefore, an implied warranty of fitness for a particular purpose also constitutes a state law requirement and is preempted by FIFRA.
 
 
 39
 We hold that Appellants' implied warranty claims are preempted by FIFRA because the asserted implied warranties operate by state law to impose labeling requirements indirectly.
 
 VI
 
 40
 Manufacturers request reasonable attorneys' fees and costs incurred in this appeal pursuant to Fed.R.App.P. 38. An award of attorneys' fees is appropriate when "the result is obvious, or the appellant's arguments of error are wholly without merit." McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir.1981) (citation omitted). It is true that in this case, the law has been clearly established not only by the Supreme Court but seven other courts of appeal. However, this circuit has never spoken on this issue, and Appellants' argument cannot be characterized as "wholly without merit." An award of attorney's fees is not appropriate.
 
 VII
 
 41
 We AFFIRM the district court's grant of summary judgment on Appellants' failure to warn claim in favor of the Manufacturers and Pure-Gro. Imposition of state tort liability for failure to warn on pesticide labels constitutes indirect state regulation of labeling and is prohibited by 7 U.S.C. Sec. 136v(b).
 
 
 42
 Likewise, we AFFIRM the district court's grant of summary judgment against Appellants on the issue of negligent testing because the claim is essentially premised upon inadequate labeling.
 
 
 43
 Finally, we AFFIRM the district court's grant of summary judgment on Appellants' express and implied warranty claims in favor of Pure-Gro. Appellants' express warranty claim is preempted by FIFRA because even if an express warranty had been made, there is no evidence that the warranty was anything more than an affirmation of the product labels. FIFRA preempts implied warranty claims because implied warranties arise by virtue of state law to impose labeling requirements indirectly.
 
 
 44
 Imposition of attorney's fees is not appropriate here where Appellants' arguments are not wholly without merit.
 
 
 45
 AFFIRMED.
 
 
 
 [1]
 The third amended complaint is mismarked as the second amended complaint
 
 
 [2]
 Appellants cite to a pre-Cipollone Ninth Circuit decision, Chemical Specialties Mfrs. Ass'n v. Allenby, 958 F.2d 941, 946 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 80, 121 L.Ed.2d 44 (1992), to buttress their claim that FIFRA does not preempt point-of-sale warnings. Allenby, however, merely held that non-label warnings were not preempted by FIFRA and never addressed the issue of whether common law damages could be imposed for the absence of these non-label warnings. In fact, the Allenby court noted in dictum that "[t]he argument against product liability suits for inadequate labeling is strong." Id. at 948
 
 
 [3]
 Our decision applies equally to all defendants. Under Cipollone, the analysis focuses not on whom the legal duty is imposed, but on whether the legal duty constitutes a state law requirement to provide information in addition to or different from the label. --- U.S. at ----, 112 S.Ct. at 2621
 
 
 [4]
 We decline to address Appellants' design defect claim because Appellants neither properly pleaded nor offered evidence to support such a claim. See Celotex, 477 U.S. at 325, 106 S.Ct. at 2553-54
 
 
 [5]
 Appellants contend that Stagner, Pure-Gro's representative, conveyed information in addition to the Manufacturers' labels and the Product Guide. However, Appellants fail to bring forth any probative evidence to support this assertion. In support of their claim, Appellants offer testimony that Stagner was in the cotton field when they were preparing to apply the pesticide mixture. Stagner allegedly assured one of the Appellants that the application of the mixture would be appropriate for the cotton. Appellants present no evidence that the scope of the assurance went beyond the label recommendations, but rather assert that they understood Stagner's assurance to be based upon his prior experience with the chemicals. Appellants, who are opposing summary judgment, cannot rest on such conclusory allegations "but must set forth specific facts showing that there is a genuine issue for trial." Leer v. Murphy, 844 F.2d 628, 631 (9th Cir.1988)