Argued and submitted July 28, 1998, reversed and remanded July 7, 1999

## Robert BROWN
### and Shirley Brown,
### husband and wife,
*Appellants,*

*v.*

## CHAS. H. LILLY CO.,
### an Oregon corporation,
*Respondent.*

### (9503-01381; CA A98898)

985 P2d 846

Maureen Leonard argued the cause for appellants. With her on the briefs was Charles Robinowitz.

Richard Alan Stout argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Linder and Brewer,* Judges.

LANDAU, P. J.

---

* Brewer, J., *vice* Riggs, J., resigned.

**LANDAU, P. J.**

Plaintiffs, Robert and Shirley Brown, initiated this action for damages for personal injuries suffered as a result of exposure to defendant's herbicide fertilizer product, Weed and Feed. The trial court entered summary judgment dismissing the claims on the ground that they are preempted by federal law. Plaintiffs appeal, arguing that the trial court erred in concluding that their claims are preempted. Defendant argues that the trial court was correct. In the alternative, it argues that dismissal was appropriate, because plaintiffs could offer no evidence of causation. We conclude that the trial court erred in concluding that plaintiffs' claims are preempted. We further conclude that plaintiffs offered sufficient evidence to create a triable issue as to causation.

■    On review of a summary judgment, we determine whether there is any genuine issue of material fact and, viewing the evidence in the light most favorable to the nonmoving party, whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997).

Defendant manufactures Weed and Feed, an herbicide fertilizer product. Plaintiff Robert Brown purchased some Weed and Feed and applied it to his lawn in accordance with the product instructions and warnings. In the application process, some of the product soaked through his boots and came into contact with his skin. Sometime later, he developed second-degree burns on his feet. Ultimately, his burns required the amputation of his left foot. Plaintiffs filed a complaint for damages against defendant. Robert Brown claimed damages for injuries caused by exposure to the Weed and Feed. He alleged negligence and strict liability, based on defendant's failure to warn of the unreasonably dangerous nature of the product when used as directed. His wife, Shirley Brown, claimed damages for loss of companionship and marital services.

Defendant moved for summary judgment on the ground that plaintiffs' claims were preempted by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 USC

section 136 *et seq*. According to defendant, its warnings complied with the requirements of federal law, and FIFRA preempts the states from adding to federal requirements as to the contents of product warnings. The trial court granted the motion.

Plaintiffs filed an amended complaint alleging strict liability, negligent testing and manufacturing, and breach of warranty. Defendant again moved for summary judgment. Defendant argued that the testing and manufacturing claims failed for lack of evidence and that the breach of warranty claim was preempted by FIFRA. Defendant further argued that the breach of warranty claim failed on causation grounds, based on an affidavit of an expert who averred that there was no basis for concluding that exposure to Weed and Feed caused any of Robert Brown's injuries. Plaintiffs conceded their lack of proof on the testing and manufacturing claims, but they insisted that their breach of warranty claim was triable. They submitted an affidavit of counsel stating that a qualified expert was prepared to testify that Robert Brown's injuries more likely than not resulted from exposure to Weed and Feed. The trial court granted defendant's second summary judgment motion, apparently on the ground of preemption; the court expressly stated that it did not base its decision on defendant's causation argument.

On appeal, plaintiffs argue that the trial court erred in granting both summary judgment motions on preemption grounds. Defendant contends that the trial court correctly concluded that plaintiffs' claims are preempted by FIFRA. According to defendant, a clear majority of federal courts addressing the issue have concluded that FIFRA has preemptive effect with respect to common-law tort claims concerning products subject to the Act. Plaintiffs reply that, under the United States Supreme Court's more recent decision in *Medtronic, Inc. v. Lohr*, 518 US 470, 116 S Ct 2240, 135 L Ed 2d 700 (1996), the validity of those earlier federal court cases is doubtful. Defendant rejoins that *Medtronic* is distinguishable on its facts. Defendant also contends, in the alternative, that the dismissal of plaintiffs' claims was appropriate because of a lack of evidence of causation.

We begin with plaintiffs' contention that the trial court erred in granting both summary judgment motions on the ground that the claims are preempted by FIFRA. FIFRA regulates the use, sale, and labeling of pesticides and is enforced by the Environmental Protection Agency (EPA). Manufacturers of pesticides such as Weed and Feed must petition the EPA for registration of their products before distributing them. 7 USC § 136a. The purpose of the registration requirement is "to prevent unreasonable adverse effects on the environment," which by definition includes not only land, air, and water, but also humans and animals. 7 USC § 136a(a). The EPA registers the pesticides and approves their labeling based on information about ingredients and use provided by the manufacturer. The manufacturer is required to submit to EPA information concerning studies of the product, as well as its adverse effects. 40 CFR § 153. The proposed labeling submitted by the manufacturer must conform to rules concerning the type, size, and placement of warnings on the package. *See generally* 40 CFR § 156. After a product is registered, the manufacturer generally is not free to change the labeling approved by the EPA without EPA approval. 7 USC § 136a(2)(A). FIFRA also includes the following provisions:

"§ 136v. Authority of States

"(a) In general

"A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

"(b) Uniformity

"Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

The task before us is to determine the scope of the express preemption provision found in 7 USC section 136v(b). Although this is a question of first impression in Oregon, courts in numerous other jurisdictions have considered it. Among the earliest cases to discuss the scope of that preemption provision was *Ferebee v. Chevron Chemical Co.,* 736 F2d 1529 (D C Cir), *cert den* 469 US 1062 (1984). In

*Ferebee*, the court considered whether the plaintiff's state law claim that he had been injured by exposure to paraquat was preempted by FIFRA. The defendant argued that 7 USC section 136v(b) preempted state claims based on inadequacy of warning labels, because liability based on inadequate warnings would implicitly establish state "requirements for labeling" of registered pesticides. *Id.* at 1540. The court rejected that argument, noting that a liability verdict on a state law claim "does not command Chevron to alter its label—the verdict merely tells Chevron that, if it chooses to continue selling paraquat in Maryland, it may have to compensate for some of the resulting injuries." *Id.* at 1541. The court further pointed out that imposition of liability for injuries caused by a pesticide would not mean that the manufacturer had to change its label in violation of EPA's requirements. Rather, the manufacturer would have various options, including ceasing sales of its product in a state, continuing sales with the EPA-approved label and paying successful tort plaintiffs injured by the product, and petitioning the EPA to allow it to change the label to provide better warnings. *Id.* at 1542. In support of its conclusion, the court noted that 7 USC section 136v(a) specifically permits a state to regulate pesticides in a manner more stringent than EPA. *Id.* at 1541. The court concluded that "if a state chooses to restrict pesticide use by requiring that the manufacturer compensate for all injuries or for some of these injuries resulting from use of a pesticide, federal law stands as no barrier." *Id.*

Similar analyses of the FIFRA preemption question were followed in numerous cases such as *Roberts v. Dow Chemical Co.*, 702 F Supp 195 (ND Ill 1988), *Riden v. ICI Americas, Inc.*, 763 F Supp 1500 (WD Mo 1991), and *Ciba-Geigy Corp. v. Alter*, 309 Ark 426, 834 SW2d 136 (Ark 1992). Various other courts, however, concluded that, even if 7 USC section 136v(b) did not expressly preempt common-law actions, they were impliedly preempted on the ground that FIFRA occupied the entire field of pesticide labeling regulation. *See, e.g., Papas v. Upjohn Co. (Pappas I)*, 926 F2d 1019 (11th Cir 1991), *vacated* 505 US 1215 (1992); *Kennan v. Dow Chem. Co.*, 717 F Supp 799 (MD Fla 1989).

In *Cipollone v. Liggett Group, Inc.*, 505 US 504, 112 S Ct 2608, 120 L Ed 2nd 407 (1992), the United States Supreme Court significantly altered federal preemption

analysis. At issue in that case was whether the Federal Cigarette Labeling and Advertising Act of 1965 and its successor, the Public Health Cigarette Smoking Act of 1969, preempted state common-law claims of negligence, strict liability, breach of warranty, and intentional torts based on illnesses caused by smoking cigarettes. The 1965 Act, which required health warnings on cigarette packages, had two purposes: "(1) adequately informing the public that cigarette smoking may be hazardous to health, and (2) protecting the national economy from the burden imposed by diverse, nonuniform, and confusing cigarette labeling and advertising regulations." *Id.* at 514 (footnote omitted). The 1965 Act contained preemption provisions indicating that no statement relating to smoking and health could be required in any advertising, nor could any statement be required on cigarette packages that were labeled in conformity with the Act. *Id.* The 1965 Act had a sunset clause, and on its expiration, the 1965 Act was replaced with the 1969 Act, which contained the following preemption provision:

> " '(b)   No requirement or prohibition based on smoking and health shall be imposed under state law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act.' "

*Id.* at 515 (quoting 15 USC § 1331).

In a plurality decision, the Court first noted that the preemptive scope of both acts was governed entirely by the express preemption language and that no implied preemption analysis was called for. In determining the scope of the express preemption language, the Court focused on the wording of the preemption clauses. In regard to the 1965 Act, the Court focused on the language, "No *statement* relating to smoking and health," and concluded that it "merely prohibited state and federal rulemaking bodies from mandating particular cautionary statements" on labels and in advertising. *Id.* at 518 (emphasis in original). In support of that conclusion, the Court noted that the express intent of the 1965 Act was to avoid "diverse, nonuniform, and confusing cigarette labeling and advertising *regulations* with respect to any relationship between smoking and health." *Id.* at 519

(emphasis in original). Thus, the court concluded that, in that context, " 'regulation' most naturally refers to positive enactments by [state legislatures and agencies], not to common-law damages actions." *Id.* In reaching its conclusion, the Court specifically noted that a federal requirement for a "particular warning does not automatically pre-empt a regulatory field," and thus "there is no general, inherent conflict between federal preemption of state warning requirements and the continued vitality of state common-law damage actions." *Id.* at 518.

As to the 1969 Act, though, the Court noted that the preemption language was much broader. Rather than barring "statements," it barred "requirements and prohibitions." Moreover, rather than regulating merely statements "in the advertising," it used the broader language, "with respect to the advertising or promotion." *Id.* at 520. The Court concluded: "The phrase '[n]o requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules." *Id.* at 521. In summary, a plurality of the Court held that language indicating that no "statement relating to smoking and health shall be required in the advertising" did not preempt common-law actions concerning failure to warn, but that the language " '[n]o requirement or prohibition' based on smoking and health shall be imposed under state law with respect to the advertising" did preempt common-law actions concerning failure to warn. *Id.*

In the wake of *Cipollone*, a number of courts addressing preemption questions concluded that the use of the word "requirement" in a federal preemption clause necessarily meant that common-law actions were preempted. In particular, a majority of federal courts considering the question concluded that section 136v(b) of FIFRA preempts state common-law tort claims for inadequate warnings, because such claims would have the effect of imposing a "requirement" for labeling or packaging that is different from those approved by EPA as part of the FIFRA registration process. *See, e.g., Taylor AG Industries v. Pure-Gro*, 54 F3d 555 (9th Cir 1995); *Lowe v. Sporicidin Int'l*, 47 F3d 124 (4th Cir 1995); *Bice v. Leslie's Poolmart, Inc.*, 39 F3d 887 (8th Cir 1994);

*Shaw v. Dow Brands, Inc.*, 994 F2d 364 (7th Cir 1993); *Pappas v. Upjohn Co. (Pappas II)*, 985 F2d 516 (11th Cir), *cert den* 510 US 913 (1993); *Arkansas-Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F2d 1177 (10th Cir), *cert den* 510 US 813 (1993).

Since then, however, the Supreme Court decided *Medtronic*, which casts doubt on those lower court decisions. In that case, a majority of the court held that a provision in the Medical Device Amendments to the Food, Drug and Cosmetic Act, 21 USC section 360k, which provides that states may not establish "any requirement" concerning medical devices does *not* preempt state tort claims concerning defects in medical devices.

The specific provision at issue in *Medtronic* prohibits any state from establishing:

"[A]ny requirement—

"(1) which is different from, or in addition to, any requirement applicable under this chapter to the [medical] device, and

"(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Chapter."

21 USC § 360k. The plaintiff brought an action against the manufacturer of her pacemaker, which she contended was defective and had caused her injuries. She claimed damages on common-law theories of defective design and inadequate warnings. The device had been marketed pursuant to a provision of the Medical Device Amendments that permitted the sale of devices that were "substantially equivalent" to ones that already were on the market before the Amendments were passed. Limited premarketing notification was required. In that context, the court addressed the manufacturer's contention that the common-law negligence action had been preempted under the express language of section 360k.

The Court began by describing what it regarded as the basic methodological framework for determining the scope of an expressly preemptive provision. The Court stated that, although the inquiry must begin with the text of the

provision, "our interpretation of that language does not occur in a contextual vacuum." *Medtronic*, 518 US at 484. The Court emphasized the importance of two contextual presumptions:

> "First, because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all pre-emption cases, and particularly in those in which Congress has 'legislated * * * in a field which the States have traditionally occupied,' *Rice v. Santa Fe Elevator Corp*, 331 US 218, 230, 67 S Ct 1146, 91 L Ed 1447 (1947), we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' * * * *Id.* at 230. * * *

> "Second, our analysis of the scope of the statute's pre-emption is guided by our oft-repeated comment, initially made in *Retail Clerks v. Shermerhorn*, 375 US 96, 84 S Ct 219, 11 L Ed 2d 179 (1963), that '[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case. * * * As a result, any understanding of the scope of a pre-emption statute must rest primarily on a 'fair understanding of congressional purpose.' *Cipollone*, 505 US at 530 n 27 (opinion of Stevens, J.). Congress'[s] intent, of course, primarily is discerned from the language of the pre-emption statute and the statutory framework. *Gade v. National Solid Wastes Management Assn.*, 505 US 88, 111, 112 S Ct 2374, 120 L Ed 2d 73 (1992) (Kennedy, J., concurring in part and concurring in the judgment). Also relevant, however, is the 'structure and purpose of the act as a whole,' *id.* at 98 (opinion of O'Connor, J.) as revealed not only in the text, but through the reviewing court's reasoned understanding of the way in which Congress intended the statute and its surrounding regulatory scheme to affect business, consumers and the law."

*Id.* at 484-85.

The court then undertook

> "a careful comparison between the allegedly pre-empting federal requirement and the allegedly pre-empted state requirement to determine whether they fall within the intended pre-emptive scope of the statute and regulations."

*Id.* at 500. With respect to the plaintiff's labeling claim, the Court concluded that the federal statute did not have preemptive effect. The Court emphasized two considerations in reaching that conclusion. First, the Court observed that the labeling requirements of the federal legislation were not specific. The particular pacemaker at issue, the Court noted, was subject only to general requirements that reflected

> "entirely generic concerns about device regulation generally, not the sort of concerns regarding a specific device or field of device regulation which the statute or regulations were designed to protect from potentially contradictory state requirements."

*Id.* Second, the Court observed that the general common-law requirement at issue "the general duty to inform users and purchasers of potentially dangerous items of the risks involved in their use"—was not specifically developed "with respect to" the medical device amendments that were subject to the federal statute. *Id.* at 501. Such general, common-law requirements, the Court concluded, were "not the kinds of requirements that Congress and the FDA feared would impede the ability of federal regulators to implement and enforce specific federal requirements." *Id.*

We had the opportunity to apply the *Medtronic* analysis in *Mears v. Marshall*, 149 Or App 641, 944 P2d 984, *adhered to as modified* 151 Or App 346, 948 P2d 731 (1997), *rev den* 327 Or 192 (1998). The plaintiff in that case brought an action for damages for personal injuries she sustained after receiving medical treatments to relieve facial wrinkles that involved injections of a collagen product that was subject to the regulatory requirements of the Medical Device Amendments. The defendant contended that the plaintiff's common-law failure to warn, defective design, and breach of warranty claims were preempted by the federal law. We disagreed.

We began by reviewing the *Medtronic* decision and describing the twin considerations that the Supreme Court found dispositive in that case. *Mears*, 149 Or App at 648-52. We concluded that a federal law will have preemptive effect only if both considerations are met, that is, when the federal law imposes specific requirements on the manufacturing or labeling of a product *and* when the state common-law

"requirement" has been specifically developed "with respect to" the product that is subject to the federal requirements in a way that would impede the ability of federal regulators to implement and enforce the specific federal requirements. *Id.* at 658. As to the medical device at issue in *Mears*, we concluded that, although the device was subject to extensive and specific federal manufacturing and labeling requirements, the plaintiff's claims were not preempted, because the common-law "requirements" imposed by her common-law claims were the same sort of general requirements found not to be preempted in *Medtronic. Id.* at 657-59.

■　　With the foregoing analysis in mind, we turn to whether FIFRA preempts plaintiffs' claims based on defendant's failure to warn about the dangers of using Weed and Feed. Congress certainly did intend to preempt something. Section 136b of FIFRA specifies that states may not impose "any requirements for labeling or packaging." The issue is the scope of the "requirements" that the state may not impose.

■　　We note at the outset that the use of the term "requirement" in FIFRA is not dispositive. The statutes at issue in both *Cipollone* and *Medtronic* preempted states from imposing "requirements," yet the Supreme Court determined that state common-law tort actions were preempted only in the former case and not in the latter. Our decision instead is determined by an examination of the relevant statutory language in light of the broader purpose of the federal la—"the touchstone in every preemption case," *Medtronic*, 518 US at 485—with an eye to examining the specificity of the federal regulatory requirements and the extent to which a common-law remedy would interfere with the purposes and specific regulatory requirements of the federal law. *Id.* at 500; *Mears*, 149 Or App at 658.

■　　FIFRA declares that the purpose of its pesticide registration requirement is "to prevent unreasonable adverse effects on the environment." 7 USC § 136a. FIFRA does not provide a private cause of action for harm caused by the use of pesticides. It does expressly provide for state regulation of any federally registered pesticide, however, as long as the state regulation "does not permit any sale or use prohibited"

by the federal law. 7 USC § 136v(a). States, in fact, retain significant authority to regulate pesticide use within their borders. *See, e.g., Wisconsin Pub. Intervenor v. Mortier*, 501 US 597, 111 S Ct 2476, 115 L Ed 2d 532 (1990) (FIFRA did not preempt local government authority to regulate pesticide use). Nothing in the general purposes of FIFRA suggests that Congress intended to preempt states from imposing liability for harm caused by the use of pesticides registered under federal law or that the imposition of common-law liability generally for harm caused by using such pesticides would interfere with the purposes of the federal law.

We turn to the specificity of the federal regulations imposed by FIFRA. The federal law does impose specific labeling requirements for products such as Weed and Feed. As we have noted, EPA registers pesticides that are subject to FIFRA and approves their labeling based on information about ingredients and use submitted by the manufacturer. The manufacturer must propose labeling, and the labeling must be approved by EPA. The labeling must conform to federal rules concerning type, size, and placement on the product package. *See generally* 40 CFR § 156.

■　Nevertheless, the specificity of the federal requirement is not controlling. As we held in *Mears*, even a statute that imposes specific labeling requirements will not preempt a state common-law claim for failure to warn if the imposition of liability is not derived from the regulation of the particular product involved, but instead derives from a more general duty to inform users and purchasers of the risks involved in using potentially dangerous products. In this case, plaintiffs' claims are predicated on the obligation of manufacturers to warn of the risks of using a dangerous product generally. They are, in fact, not materially different from the claims asserted in both *Medtronic* and *Mears*, which in both cases were held not to have been preempted.

■　In the final analysis, we are unable to conclude that Congress intended FIFRA to preempt common-law failure to warn or breach of warranty claims arising out of the use of pesticides subject to the regulatory requirements of the Act. The broader purpose of FIFRA is to protect public health, not to shield manufacturers from tort liability. Although FIFRA

imposes extensive and specific regulatory requirements concerning the labeling of registered pesticides, it also specifically preserves broad state regulatory authority over the use of registered pesticides. Moreover, as in *Medtronic* and *Mears*, the general obligations that flow from the imposition of liability for failure to warn and breach of warranty pose no threat to the regulatory requirements imposed by the federal law. We conclude that plaintiffs' claims are not preempted by FIFRA and that the trial court erred in granting both summary judgment motions.

Defendant asserts what it labels a "cross-assignment" of error, arguing that the trial court's dismissal of plaintiffs' claims nonetheless was correct, because plaintiffs offered no proof of causation. According to defendant, the trial court erred in concluding that plaintiffs' affidavit was sufficient to ward off a summary judgment.

Strictly speaking, defendant's argument is not a "cross-assignment" of error. A cross-assignment is a mechanism for challenging a ruling of the trial court, not a reason for its ruling. *See Oak Crest Const. Co. v. Austin Mutual Ins. Co.*, 137 Or App 475, 478 n 2, 905 P2d 848 (1995) ("The trial court's various reasons for its ruling on the motions for summary judgment are not independently assignable as error."). We treat defendant's contention simply as an assertion that the trial court was right for the wrong reason.

On the merits, we reject defendant's contention. Although defendant presented affidavits in support of its summary judgment motion indicating that several experts did not believe that Weed and Feed could have caused plaintiff Robert Brown's injuries, plaintiffs presented a countering affidavit of counsel that an expert would testify that exposure to defendant's product more likely than not did cause the injuries. Under ORCP 47 E, plaintiffs' affidavit is sufficient to create a genuine issue of material fact as to causation. *Stotler v. MTD Products, Inc.*, 149 Or App 405, 943 P2d 220 (1997).

Defendant insists that plaintiffs' affidavit must be disregarded as having been submitted in bad faith, because they conceded to the trial court that they could not prove defective manufacture or design. That, however, does not

mean that plaintiffs cannot go forward on their other claims, which are not predicated on defective manufacture or design.

Reversed and remanded.