**Terry GEYE and Brandon Geye, Appellants,**

v.

**AMERICAN CYANAMID COMPANY, Appellee.**

**No. 11–99–00034–CV.**

Court of Appeals of Texas, Eastland.

Nov. 16, 2000.

Kerwin B. Stephens, Stephens & Myers, Graham, for appellants.

Russell B. Power, Marlene S. Thomson, Hart & Power, Dallas, for appellee.

Panel consists of ARNOT, C.J., and McCALL, J., and McCLOUD, S.J.*

## OPINION

AUSTIN McCLOUD, Senior Justice, Assigned.

The issue in this case is whether plaintiffs' state law claims are preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). 7 U.S.C.A. § 136 et seq. (West 1999). We hold that they are not.

Terry Geye and Brandon Geye sued American Cyanamid Company contending that the mixed application of herbicides, Prowl and Pursuit, manufactured by defendant damaged plaintiffs' peanut crop. Plaintiffs alleged theories of strict liability, breach of express and implied warranties, and violation of the Texas Deceptive Trade Practice–Consumer Protection Act (DTPA).[1] The trial court granted defendant's motion for summary judgment on the ground that plaintiffs' claims were preempted by FIFRA.

The summary judgment proof shows that plaintiffs treated some of their land with a tank mix combination of Prowl and Pursuit. The peanuts in the treated fields did not develop properly. The roots were stunted, and the plants did not properly develop foliage. Before purchasing Prowl and Pursuit, plaintiffs relied upon off-label magazine and brochure advertisements made by defendant regarding Prowl and Pursuit. These advertisements stated that "PURSUIT can be tank mixed with other popular products such as PROWL herbicide." The Pursuit labeling specifically stated that Pursuit and Prowl may be combined by tank mixing.[2] There is summary judgment proof that plaintiffs sustained substantial loss in yield because of the combined application of Prowl and Pursuit.

■ All of plaintiffs' state law claims relate directly or indirectly to the product label stating that the herbicides may be combined by tank mixing. Defendant relies upon many federal and state cases that have held that state law claims against manufacturers of Environmental Protection Agency (EPA) registered pesticides which relate directly or indirectly to labeling are preempted by FIFRA. See *Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244 (3rd Cir.1999); *Andrus v. AgrEvo USA Company*, 178 F.3d 395 (5th Cir. 1999); *Kuiper v. American Cyanamid Company*, 131 F.3d 656 (7th Cir.1997), cert. den'd, 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998); *Welchert v. American Cyanamid*, Inc., 59 F.3d 69 (8th Cir.1995); *Taylor AG Industries v. Pure–Gro*, 54 F.3d 555 (9th Cir.1995); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir.1994); *Worm v. American Cyanamid Company*, 5 F.3d 744 (4th Cir.1993); *King v. E.I. Dupont De Nemours and Company*, 996 F.2d 1346 (1st Cir.), cert. dism'd, 510 U.S. 985, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Etcheverry v. Tri–Ag Service, Inc.*, 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366 (Cal.2000).

The Texas Supreme Court in *Quest Chemical Corporation v. Elam*, 898 S.W.2d 819, 820 (Tex.1995), when considering the alleged failure of the manufacture

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Vernon 1987 & Pamph Supp.2000).

2. The off-label statements merely repeated information on the labels. See *Kuiper v. American Cyanamid Company*, 131 F.3d 656 (7th Cir.1997).

of a herbicide to provide adequate warnings and instructions on its product, stated:

> FIFRA provides a detailed scheme for regulating the content and format of labeling for herbicides and other chemical substances. It requires, among other things, that all herbicides sold in this country be registered with the United States Environmental Protection Agency ("EPA"). See *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1024 (5th Cir. 1994) (discussing the details of FIFRA labeling requirements); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747 (4th Cir.1993) (reviewing the preemptive scope of FIFRA). FIFRA preempts all common law tort suits against manufacturers of EPA-registered pesticides which are based solely upon claims relating directly or indirectly to labeling.

■ FIFRA expressly mandates that a "State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C.A. § 136v. The preemptive effect of FIFRA is dependent on agency regulations. *Hawkins v. Leslie's Pool Mart, Inc., supra.* The court in *Welchert v. American Cyanamid, Inc., supra* at 71, described the role of the EPA as:

> FIFRA creates a comprehensive scheme for the regulation of pesticide labeling and packaging. See *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 601, 111 S.Ct. 2476, 2479–80, 115 L.Ed.2d 532 (1991). Furthermore, all pesticides sold in the United States must be registered with the Environmental Protection Agency (EPA). See 7 U.S.C. § 136a(a). "The objectives and purposes of FIFRA include the strengthening of federal standards, increasing EPA authority for their enforcement, and providing a comprehensive and uniform regulation of the labeling, sale, and use

of pesticides." W*orm v. American Cyanamid Company*, 5 F.3d at 747. FIFRA establishes a complex process of EPA review that culminates in the approval of a label under which a product may be marketed. Manufacturers must submit draft label language addressing a number of different topics, including ingredients, directions for use, and adverse effects of the products, see 7 U.S.C. § 136a(c); 40 C.F.R. § 152.50 & pt. 156, and a final label must be submitted to the EPA prior to registration. 40 C.F.R. § 156.10(a)(6).

On June 3, 1996, the EPA office of Pesticide Programs issued Pesticide Regulation (PR) Notice 96–4. Our decision is based upon the information contained in that official notice, and we conclude that we should quote extensively from the EPA regulation.[3] (PR) Notice 96–4 provides in part:

> EPA is issuing this notice at this time to correct a misunderstanding regarding the FIFRA label approval process and efficacy claims that is reflected in a series of court decisions concerning the preemptive effect of FIFRA.

## II. LEGAL FRAMEWORK

### A. Registration and the Label Approval Process

EPA approves pesticide labels in the process of registering a pesticide under FIFRA. FIFRA specifies that EPA shall register a pesticide if:

> (1) its composition is such as to warrant the proposed claims for it;
>
> (2) its labeling and other material required to be submitted comply with the requirements of this Act;
>
> (3) it will perform its intended function without unreasonable adverse effects on the environment; and
>
> (4) when used in accordance with widespread and commonly recognized practice it will not generally

---

**3.** (PR) Notice 96–4 has only recently been discussed by the courts. It was not urged in the trial court in this case.

cause unreasonable adverse effects on the environment.

7 U.S.C. § 136c(c)(5). Although the first registration requirement identified above mandates that EPA consider efficacy of label claims, Congress, in 1978, explicitly gave EPA the authority to waive that requirement. FIFRA states:

> In considering an application for the registration of a pesticide, the Administrator may waive data requirements pertaining to efficacy, in which event the Administrator may register the pesticide without determining that the pesticide's composition is such as to warrant proposed claims of efficacy.

EPA has acted under this authority to waive, by regulation, data requirements as to efficacy issues for all agricultural pesticides. 44 Fed.Reg. 27932, 27938 (col.3) (May 11, 1979); 40 CFR 158.640(b)(1); see also 47 Fed.Reg. 57624 (December 27, 1982). EPA concluded that agriculture pesticides are "effectively regulated by the marketplace." 44 Fed.Reg. 27932, 27938 (col.3) (May 11, 1979), and that waiving review of the efficacy of agricultural pesticides in the registration process would enable the Agency to focus of its "primary mandate under FIFRA": investigating "the health and safety aspects of pesticides." 47 Fed.Reg. 53192 (November 24, 1982); 47 Fed.Reg. 40659, 40661 (col.1) (September 15, 1982). EPA pointed to private legal actions for damages as one factor that would ensure that pesticide manufactures sold an efficacious product: "pesticide producers are aware that they are potentially subject to damage suits by the user community if their products prove ineffective in actual use." 47 Fed.Reg. 40659, 40661 (col.2) (September 15, 1982).

FIFRA permits states broad authority to regulate pesticides but makes it unlawful for states that undertake such regulation to "impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this Act." 7 U.S.C. § 136v(b). A number of federal court decisions have held that this preemption of state authority as to pesticide labels bars damage claims in state court by growers against pesticide manufacturers. The courts have reasoned that allowing such a claim by a grower would be, in effect, permitting the state to impose label requirements "in addition to or different from" the federally-approved label.

There have been several recent preemption decisions involving claims by growers concerning pesticidal efficacy or property damage caused by a pesticide. For example, in *Taylor AG Industries v. Pure–Gro*, 54 F.3d 555 (9th Cir.1995), several growers sued the manufacturers and distributor of a pesticide that the growers alleged had damaged their cotton crop even through they had applied the pesticide according to the label directions. The court denied the growers' claims on the ground that allowing recovery of damages would interfere indirectly with EPA's "rigorous label-approval process." *Id.* at 560. In *Welchert v. American Cyanamid, Inc.*, 59 F.3d 69 (8th Cir.1995), and *Worm v. American Cyanamid, Inc.*, 5 F.3d 744 (4th Cir. 1993), growers sued a pesticide manufacturer seeking recovery for harm to crops allegedly caused when the manufacturer's herbicide remained in the soil and damaged rotated crops. Both courts dismissed the growers' claims noting that EPA's labeling regulations required instructions on rotational crop restrictions. The courts reasoned that to permit such lawsuits "would be to allow state courts to sit, in effect, as super-EPA review boards that could question the adequacy of the EPA's determination of whether a pesticide registrant successfully complied with the specific labeling requirements of its own regulations." *Welchert*, 59 F.3d at 73; *Worm*, 5 F.3d at 749.

These court decisions are based on the premise that, in approving labels for agricultural pesticides, EPA examines, or at least has the obligation to examine, the efficacy of the pesticide and related issues such as the potential for the pesticide to cause property damage. The courts, however, have not taken into account the plain language of the statute on this issue and have misinterpreted the thrust of EPA's regulations. As noted above, in actual fact, EPA, with Congress' approval, stopped evaluating pesticide efficacy for routine label approvals almost two decades ago. Further, as explained below, EPA's regulations do not require a review of efficacy of property damage issues for agricultural pesticides.

Finally, as to pesticide users this Notice is intended to clarify that EPA's approval of a pesticide label does not reflect any determination on the part of EPA that the pesticide will be efficacious or will not damage crops or cause other property damage.

The Supreme Court of California in Etcheverry v. Tri–Ag Service, Inc., supra, recently discussed (PR) Notice 96–4. The claimants in *Etcheverry* contended that their walnut crop was damaged because of inadequate labeling of certain pesticides. The trial court granted a summary judgment holding that claimants' claims were preempted by FIFRA. The United States filed an amicus curiae brief on behalf of the claimants citing (PR) Notice 96–4 and argued that the case involved pesticide efficacy and that claimants' state law claims were not preempted by FIFRA.

The Supreme Court of California first concluded that claimants were not claiming that the pesticides they used were "inefficacious" but rather that they claimed that they should have been warned that the combined use of pesticides could be "phytotoxic." The court discussed the EPA's guidelines regarding "phytotoxicity" as distinguished from "efficacy" and stated that "Phytotoxicity is not a matter of efficacy." The court continued:

> Because the EPA does not review efficacy claims, the United States asserts, "preemption of state damages actions challenging pesticide efficacy would leave such statements largely, or entirely, unregulated."

Again, the short answer to this argument is that the EPA's waiver of the submission of efficacy data is irrelevant, since plaintiffs complain of phytotoxicity, not inefficacy. However, even assuming arguendo that phytotoxicity is included within the concept of efficacy, there remain two fundamental flaws in the argument that pesticide efficacy will go "largely, or entirely, unregulated" if state failure-to-warn claims are preempted: (1) Although the EPA has waived the submission of efficacy data for agricultural pesticides at the time of their initial registration, the agency does require and review such data if efficacy-related problems develop later; and (2) California has a comprehensive registration and regulatory program for pesticides, and while the California Department of Pesticide Regulation may not impose its own requirements for labeling, it can restrict or prohibit the sale or use of products that it determines are inefficacious or phytotoxic.

The court concluded that FIFRA preempts state law claims for failure to warn of the risks of using a pesticide. We do not agree with the *Etcheverry* court that the court's answers to the questions raised by the United States determine the issue of federal preemption.

The court in *Nathan Kimmel, Inc. v. DowElanco*, 64 F.Supp.2d 939 (C.D.Cal. 1999), recognized that the EPA stated in (PR) Notice 96–4 that it has exercised its statutory option to waive certain data requirements under FIFRA. The court, however, concluded:

> While these are valid arguments, the Court is bound by the currently-existing law of this circuit. Therefore, though

the Court encourages Kimmel to raise these issues on appeal, the Court must find Kimmel's claims preempted.

■ We do not believe that Congress intended to preempt state law efficacy claims after the EPA exercised its authority and, as noted in (PR) Notice 96–4, "stopped evaluating pesticide efficacy for routine label approvals almost two decades ago." The purpose of Congress is the ultimate touchstone in every preemption case. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

We point out that our decision is not in conflict with our supreme court's opinion in Quest Chemical Corporation v. Elam, supra. That case involved *personal injuries* resulting from the use of a product. This case involves the *efficacy* of the tank mix combination of the products and *property damage*. (PR) Notice 96–4 expressly states that:

> [W]aiving review of the efficacy of agricultural pesticides in the registration process would enable the Agency to focus of its "primary mandate under FIFRA": investigating "the health and safety aspects of pesticides."

We hold that plaintiffs' state law claims relating directly or indirectly to labeling are not preempted by FIFRA because such claims involve the efficacy of the products and not the risks to humans and the environment posed by the use of the product.

The judgment of the trial court is reversed, and the cause is remanded.