**NATHAN KIMMEL, INC., et al., Plaintiffs,**

v.

**DOWELANCO, Defendant.**

**No. CV 97–3941 DDP(RNBX).**

United States District Court, C.D. California.

Sept. 7, 1999.

Joel R Bennett, Bennett & Fairshter, Pasadena, CA, for plaintiffs.

Rodney Joseph Stone, Chad S Hummel, William E Wegner, Gibson Dunn & Crutcher, Los Angeles, CA, for defendants.

## ORDER GRANTING MOTION TO DISMISS

PREGERSON, District Judge.

This matter comes before the Court on defendant DowElanco's motion to dismiss or strike plaintiffs' first amended complaint. The Court grants the motion to dismiss.

## I. Background[1]

Defendant DowElanco manufactures pesticides, including a pesticide called Vikane, which is used against termites. The EPA regulates Vikane, which carries a label that must be EPA-approved. The Vikane label contains, among other things,

instructions on the proper use of the pesticide. It is a violation of federal law to use Vikane in a manner inconsistent with its label.

Vikane is used to fumigate structures, including areas that typically contain food or medicine. To protect food and medicine from the pesticide, these items must either be removed from the area or placed in special protective bags. This is indicated on the Vikane label.

DowElanco owns the trademark for one such protective bag, Nylofume. DowElanco has licensed the use of this mark to M & Q Plastics Products, which manufactures and sells the bags. DowElanco claims to receive no royalties or revenues from the license of the Nylofume mark.

The plaintiffs (collectively "Kimmel") also manufacture a bag designed to protect food and medicine during fumigations. Their product, which is essentially similar to Nylofume, is called the NK–6 bag.

Before 1993, DowElanco had tests done on various brands of nylon polymer bags. Of the four bags tested, the two made by M & Q had the lowest percentages of protection.

From 1993 until 1996, the label on Vikane canisters read in relevant part:

Food, feed, drugs, and medicinals ... must be removed from the fumigation site or sealed in highly resistant containers such as glass, metal or double bagging with nylon polymer bags (such as Nylofume,® Fumebag,® or Reynolon HRF.® These protective bags are available only from distributers of this product.)

This label did not restrict the use of bags that were similar to those listed on the label but not explicitly mentioned.

In March 1994, representatives of the plaintiffs informed DowElanco of the plaintiffs' intention to manufacture nylon polymer bags for use with Vikane. DowElanco

---

1. Many of these facts are taken from the evidence submitted in relation to a motion for summary judgment filed by DowElanco in 1998. The Court includes them here in the interest of presenting a complete picture of the facts underlying this action.

advised the plaintiffs not to invest money in manufacturing bags.

On March 7, 1994, DowElanco wrote a letter to M & Q, which stated: "Due to some recent discrepancies, our product specimen label for Vikane gas fumigant will now list Nylofume bags as the only option for bagging food during a fumigation." The alleged discrepancies, were never identified.

On March 10, 1994, DowElanco wrote a letter to the plaintiffs stating that DowElanco had

> consulted with [its] legal and registration group and [had come] to [the] determination that Nylofume bags are the only bags that can be allowed for use during a fumigation with Vikane gas fumigant. Due to the approval of the EPA of certain bag types tested (including material, sealing methods, and closure types), DowElanco's liability associated with the Nylofume bag, they will remain the only approved bag on the label.

During March of 1994, at the time of these statements, the label on Vikane did not require the use of only Nylofume bags.

On April 8, 1994, DowElanco applied to the EPA to amend the label on Vikane. The proposed amendment would, among other things, change the label to require that foodstuffs be removed from the area "or double bagged in Nylofume bags, which are available from the distributors of this product." This language effectively bars the use of NK–6 bags for Vikane applications.

DowElanco told the EPA that the reason for this amendment was that the Nylofume bag "has proven to be best suited for this use," and Nylofume bags "have proven to be the most reliable." At the time of DowElanco's proposal, Nylofume bags were the only protective bags on the market. Kimmel asserts that DowElanco's proposal was intended to mislead the EPA and was intended to prevent Kimmel from competing in the nylon bag market.

Kimmel distributed nylon polymer bags from the Fall of 1994 through December 1997. These bags were used with Vikane gas fumigation.

In October 1996, the EPA approved DowElanco's proposed amendment. Because of the changed label, as of January 1, 1998, the State of California began citing and fining any fumigator that uses non-Nylofume bags with Vikane fumigations.

Kimmel sued DowElanco, alleging various theories of liability. In November 1998, DowElanco moved for summary judgment on Kimmel's claims. The Court denied the motion for summary judgment but struck portions of the complaint and ordered Kimmel to amend the complaint.

On December 30, 1998, Kimmel filed an amended complaint which now asserts two causes of action premised on DowElanco's alleged improper amendment of the label to exclude Kimmel from the bag market. First, Kimmel seeks injunctive relief pursuant to California Business and Professions Code § 17200. Second, Kimmel seeks damages based on a claim for intentional interference with prospective economic advantage.

DowElanco challenges Kimmel's amended complaint in two ways. First, DowElanco asserts that both of Kimmel's causes of action are preempted by federal law. Second, DowElanco claims that the amendments to Kimmel's complaint exceeded the scope of the Court's authorization. Therefore, DowElanco requests that portions of the amended complaint be stricken. Because the Court grants the motion to dismiss, the Court need not rule on the motion to strike.

## II. Motion to Dismiss

Kimmel's first amended complaint asserts two causes of action: unfair business practices and intentional interference with prospective business advantage. DowElanco has moved to dismiss, alleging that such state law claims relating to a pesticide label are preempted by federal law.

Kimmel claims that DowElanco cannot now assert this preemption argument be-

cause it was waived by DowElanco's failure to raise it earlier. In addition, Kimmel asserts that because DowElanco mentioned preemption during oral argument of the summary judgment motion in November 1998, it may not raise it here without a motion for reconsideration of the November 1998 order.

DowElanco did raise the preemption argument in its answer to Kimmel's original complaint, but DowElanco did not properly raise the argument in its November 1998 motion for summary judgment.[2] While it is unclear why DowElanco failed until now to properly raise this argument, in the interest of resolving matters on the merits, the Court will address DowElanco's argument.

In its November 1998 order, the Court addressed the facts and arguments supporting Kimmel's claim of unfair business practices under California Business and Professions Code § 17200. In that order, the Court concluded that Kimmel properly alleged a violation of that section and that its evidence was sufficient to survive a motion for summary judgment. The only question now before the Court is whether Kimmel's claim is preempted by the federal regulatory scheme.

## A. General Standards for Federal Preemption

The United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2. "[S]ince [the] decision in *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 427, 4 L.Ed. 579, (1819), it has been settled that state law that conflicts with federal law is 'without effect.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citing *Maryland v.*

*Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)).

Although the Constitution gives federal law this preemptive power, it is not to be found carelessly. "[B]ecause the States are independent sovereigns in our federal system, [courts] have long presumed that Congress does not cavalierly pre-empt state-law causes of action." *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Instead, "[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by . . . Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Thus, "'[t]he purpose of Congress is the ultimate touchstone' in every pre-emption case." *Medtronic,* 518 U.S. at 485, 116 S.Ct. 2240 (quoting *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)).

Congress can express its intent to preempt state law in three ways. First, "intent to supplant state authority in a particular field may be expressed in the terms of the statute." *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 604–05, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). Second, even if Congress does not include explicit pre-emptive language, its intent "may nonetheless be implicit if a scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, . . . .'" *Id.* at 605, 111 S.Ct. 2476 (quoting *Rice,* 331 U.S. at 230, 67 S.Ct. 1146). Finally, "pre-emption may occur to the extent that state and federal law actually conflict[,]" which occurs "when 'compliance with both federal and state regula-

**2.** While DowElanco may have briefly mentioned preemption during oral argument regarding summary judgment, nowhere in its motion or reply does DowElanco refer to this defense. In its reply brief in the present motion DowElanco asserts that "the FIFRA preemption issue was not before the Court on the earlier motion for summary judgment."

tions is a physical impossibility.' " *Id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)).

The Court must apply these principles to the present case.

## B. FIFRA Preemption

■ Kimmel's claims against DowElanco are based on DowElanco's alleged exclusion of Kimmel from the market for bags designed for use with Vikane gas. DowElanco allegedly accomplished this exclusion by amending the Vikane label. This implicates the provisions of the Federal Insecticides, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 et seq., commonly known as FIFRA.

FIFRA was enacted in 1947 and was "primarily a licensing and labeling statute." *Mortier,* 501 U.S. at 601, 111 S.Ct. 2476. In 1972, Congress significantly strengthened FIFRA, resulting in a scheme that " 'regulated the use, as well as the sale and labeling, of pesticides; regulated pesticides produced and sold in both intrastate and interstate commerce; [and] provided for review, cancellation, and suspension of registration.' " *Id.* at 601, 111 S.Ct. 2476 (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 991, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)) (brackets in original).

FIFRA addresses the authority of states to regulate pesticides:

(a) In General

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for label-

ing or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v.

Thus, while a state may impose stricter use and sale regulations, it may not alter labeling and packaging regulations in any way.[3] Many courts have found that this prohibition preempts state tort claims predicated on pesticide label contents.

In *Taylor AG Indust. v. Pure–Gro,* 54 F.3d 555 (9th Cir.1995), the Ninth Circuit found various tort claims preempted by § 136v(b). Taylor sued Pure–Gro for damages allegedly caused by pesticides sold by Pure–Gro. Taylor alleged five causes of action: (1) strict liability for failure to provide adequate warning; (2) negligent failure to test and design the chemicals for the conditions in which Taylor used them; (3) breach of express warranty; (4) breach of implied warranty of merchantability; (5) breach of implied warranty of fitness for a particular purpose. *Id.,* 54 F.3d at 558.

The *Taylor* court concluded that each of the claims "essentially boils down to a claim that the [defendant's] product labels, which have been approved by the EPA in accordance with FIFRA, inadequately warned [Taylor] of the hazards associated with the [pesticides]." *Id.,* 54 F.3d at 560. The *Taylor* court found that "[i]n order to prevail on [the] failure to warn claim, [Taylor] would have to prove that the labels contained insufficient information and that different labels were warranted. Awarding damages on [Taylor's] claim would therefore be tantamount to allowing the state of Arizona to regulate pesticide labeling indirectly, an action which is specifically prohibited by § 136v(b)." *Id.* On similar analysis, the *Taylor* court reached the

---

**3.** This creates a strange result: under § 136v(a), a state may restrict a particular use of a pesticide; § 136v(b), however, prohibits the state from noting this prohibition on the pesticide's label. Because this allows a state to enact regulations but prohibits the normal means of publicizing these regulations, this result has been described as "an enforcement nightmare." Stever, *Law of Chemical Regulation and Hazardous Waste,* § 3.09[2] at p. 3–110 (West 1999).

same result regarding the remainder of Taylor's tort claims. *Id.* at 562–63.

Similar results have been reached in many other cases considering the intersection of FIFRA and state tort claims. *See, e.g., Bice v. Leslie's Poolmart, Inc.,* 39 F.3d 887, 888 (8th Cir.1994); *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1024–25 (5th Cir.1994); *Worm v. Am. Cyanamid Co.,* 5 F.3d 744, 747 (4th Cir.1993); *King v, E.I. Dupont De Nemours & Co.,* 996 F.2d 1346, 1349 (1st Cir.1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir. 1993); *Papas v. Upjohn Co.,* 985 F.2d 516, 518 (11th Cir.1993); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.,* 981 F.2d 1177, 1179 (10th Cir.1993).[4]

*Taylor* controls this Court's analysis and it requires preemption of the claims in Kimmel's amended complaint. Each of the claims "essentially boils down to a claim that the [defendant's] product labels, which have been approved by the EPA in accordance with FIFRA, [are inaccurate or inappropriate]." *Taylor,* 54 F.3d at 560. "In order to prevail on [its] claim, [Kimmel] would have to prove that ... different labels were warranted. Awarding damages on [Kimmel's] claim would therefore be tantamount to allowing the state of [California] to regulate pesticide labeling indirectly, an action which is specifically prohibited by § 136v(b)." *Id.* Thus, Kimmel's claims are preempted.

In an amicus brief filed with the Court, the EPA suggested that preemption is unwarranted. However, while the EPA's arguments may be persuasive, the Court is bound by the Ninth Circuit's interpretation of FIFRA. Therefore, this Court must follow *Taylor* unless and until the Ninth Circuit alters that interpretation.

While bound by *Taylor,* the Court feels obligated to briefly point out some arguments that might support the Ninth Cir-

cuit's reconsideration of whether *Taylor* should continue to be the rule in this circuit.

First, as noted, the EPA itself has taken the position that FIFRA does not and should not preempt all state tort actions. (*See* Amic. Br.Ex.1 (EPA Brief to Cal. Supreme Court in *Monique Etcheverry v. Tri–Ag Service, Inc.,* 78 Cal.Rptr.2d 524, 962 P.2d 886 (1998)).) The EPA takes this position based on its interpretations of FIFRA's language and Congress's intent. (*See id.* (presenting thorough analysis of statute and congressional proceedings).) Because the EPA is the agency charged with administering FIFRA, its interpretations should receive great deference. *See Chevron v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Second, since *Taylor* was decided, the EPA has indicated that it has exercised its statutory option to waive certain data requirements under FIFRA. *See* EPA Pesticide Regulation Notice 96–4, June 3, 1996; *see also* David W. Stever, *Law of Chemical Regulation and Hazardous Waste* § 3.09[2], at p. 3–113 (1999); News & Analysis, 28 Envtl.L.Rptr. 10241 (May, 1998). As the EPA argues in its amicus brief to the California Supreme Court, the fact that the EPA has waived consideration of certain matters should alter the preemption analysis. *Cf. Medtronic, Inc. v. Lohr,* 518 U.S. 470, 495–501, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996).

While these are valid arguments, the Court is bound by the currently-existing law of this circuit. Therefore, though the Court encourages Kimmel to raise these issues on appeal, the Court must find Kimmel's claims preempted.

---

4. Some courts have held that FIFRA does not preempt all state tort claims. *See, e.g., Ferebee v. Chevron Chem. Co.,* 736 F.2d 1529 (D.C.Cir.1984); *but see Stamps v. Collagen Corp.,* 984 F.2d 1416, 1424–25 (5th Cir.1993) (holding that *Ferebee* did not survive the deci-sion in *Cipollone,* 505 U.S. at 504, 112 S.Ct. 2608); *see also New York State Pesticide Coalition v. Jorling,* 874 F.2d 115 (2d Cir.1989) (finding state notification law not preempted despite argument that it created additional labeling requirement).

## III. Conclusion

Kimmel's state law claims against Dow-Elanco are preempted by FIFRA. But this does not leave Kimmel completely without a remedy. In addition to the arguments discussed earlier, the Court directs Kimmel's attention to the EPA's amicus brief in which the EPA indicates that Kimmel may be able to bring an administrative action within the EPA or might sue the EPA under the Administrative Procedures Act. Kimmel's complaint is dismissed without leave to amend.

IT IS SO ORDERED.