TEDD K. HOCHBERG & others[1] *vs.* ZOECON CORPORATION
                    ·        & others.[2]

Middlesex. September 14, 1995. - December 8, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Constitutional Law*, Federal preemption. *Statute*, Federal preemption.
*Federal Insecticide, Fungicide, and Rodenticide Act. Negligence*,
Manufacturer.

Discussion of *Cipollone* v. *Liggett Group, Inc.*, 505 U.S. 504 (1992), in
    which the United States Supreme Court addressed the preemptive
    effect of the Public Health Cigarette Smoking Act of 1969, Pub. L. 91- ˌ
    222, 84 Stat. 87, as amended, 15 U.S.C. §§ 1331-1340, on cigarette-
    related bodily injury and death claims based on State tort law. [459-
    460]
Section 136v (b) of the Federal Insecticide, Fungicide, and Rodenticide
    Act of 1988 (FIFRA), 7 U.S.C. §§ 136-136y (1994), which explicitly
    prohibits States from imposing labeling or packaging "requirements"
    on any federally registered pesticide different from those imposed by
    FIFRA, also precludes States from establishing and applying tort law
    to achieve the same result [460-461]; consequently, a Superior Court
    judge correctly entered summary judgment for defendant pesticide
    manufacturers, distributors and sellers on claims based on a theory of
    inadequate warning or labeling, which are preempted by the Federal
    law [461-462].

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 28, 1988.

Motions for summary judgment were heard by *Margot
Botsford*, J., and a matter was reported by her to the Ap-
peals Court. The Supreme Judicial Court on its own initia-
tive transferred the case.

                                    ·

[1]Carolyn K. Hochberg and Beth Hochberg.
[2]New Holland Supply Co., Inc.; Townsend Farmers' Exchange, Inc.; ICI
Americas Inc.; and Stauffer Chemical Company.

*Steven L. Hoffman* (*G. Thomas Pauling* with him) for the plaintiffs.

*Robert L. Ciociola* (*Thomas J. Walsh & Carmine W. DiAdamo* with him) for the defendants.

O'CONNOR, J. The plaintiff Tedd K. Hochberg (Hochberg) seeks damages for personal injuries he allegedly sustained as a result of using Pro Dip II, a pesticide manufactured, distributed or sold by the defendants. The plaintiffs Carolyn K. Hochberg and Beth Hochberg, respectively, assert claims for loss of consortium and loss of parental society. The plaintiffs' theories of recovery are negligence and breach of implied warranty of merchantability.

The defendants moved for summary judgment, and a judge in the Superior Court allowed the motions "as to as much of the Plaintiffs' complaint as is based on a theory of inadequate warning or labeling" and denied the motions insofar as the complaint "may . . . be predicated on the argument that Pro Dip II is not suitable for home use and should be sold only to professionals." The judge then reported to the Appeals Court the correctness of her grant of summary judgment to the defendants on the inadequate warning or labeling claims. The judge did not report the correctness of her denial of summary judgment with respect to a possible claim that Pro Dip II is not suitable for home use and should be sold only to professionals.

We transferred the case to this court on our own initiative. We affirm the order granting summary judgment to the defendants as to so much of the complaint as is based on a theory of inadequate warning or labeling. Because the judge did not report the correctness of her partial denial of the defendants' motions for summary judgment, we shall not review that ruling.

We recite the significant facts established for summary judgment purposes by materials described in Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). Hochberg used Pro Dip II, a flea dip, to treat his dogs for fleas. Hochberg mixed the dip solution in a bucket and poured the solution over the dogs using a coffee can. He performed this dipping operation in-

doors and wore no protective clothing. During the application, Hochberg's arms and hands were exposed to the dip solution. Soon after beginning the dogs' treatment, Hochberg began to feel ill. He sustained severe and permanent injuries as a result of his use of Pro Dip II.

According to the summary judgment materials, the defendant Zoecon Corporation (Zoecon) manufactured the Pro Dip II used by Hochberg, in which the active ingredient was "Prolate." Prolate was manufactured by the defendant Stauffer Chemical Corporation. Stauffer Chemical Corporation has reorganized, and Zeneca, Inc., formerly known as ICI Americas Inc., now owns the division responsible for manufacturing Prolate. Prolate is a pesticide and is regulated by the Federal Insecticide, Fungicide, and Rodenticide Act of 1988 (FIFRA), 7 U.S.C. §§ 136-136y (1994). In accordance with FIFRA, Zoecon submitted Pro Dip II and its proposed labeling to the United States Environmental Protection Agency (EPA) for approval. Zoecon's labeling was approved and the product was duly registered. Zoecon has distributed Pro Dip II only with its EPA-approved label. Similarly, Stauffer Chemical Corporation and Zeneca have distributed Prolate only with its EPA-approved labeling. The defendant New Holland Supply Co., Inc., is a distributor of Pro Dip II, and the defendant Townsend Farmers' Exchange, Inc., is a seller of Pro Dip II.

In support of their motions for summary judgment, the defendants asserted that § 136v(b) of FIFRA preempted the plaintiffs' tort claims which, the defendants argue, are directed solely to the defendants' alleged failure adequately to warn of the risks presented by the use of Pro Dip II.[3] Section 136v of FIFRA, entitled "Authority of States," provides:

> "(a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

---

[3]In opposing summary judgment, the plaintiffs maintained, on the other hand, that their claims are also based on a theory that Pro Dip II is unsuitable for home use and should be sold only to professionals.

"(b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

It is undisputed that § 136v(b) explicitly prohibits States from imposing labeling or packaging "requirements" that differ from those imposed by FIFRA. The parties do not agree, however, on whether the word, "requirements," in § 136v(b) refers only to labeling and packaging mandates contained in State statutes and administrative regulations, as the plaintiffs contend, or, as the defendants argue, refers also to liability for negligence and breach of warranty imposed by State tort law.

In *Cipollone* v. *Liggett Group, Inc.*, 505 U.S. 504 (1992), the United States Supreme Court addressed the preemptive effect of the Public Health Cigarette Smoking Act of 1969, Pub. L. 91-222, 84 Stat. 87, as amended, 15 U.S.C. §§ 1331-1340, on cigarette-related bodily injury and death claims based on State tort law. The 1969 Act amended the Federal Cigarette Labeling and Advertizing Act of 1965, Pub. L. 89-92, 79 Stat. 282, as amended, 15 U.S.C. §§ 1331-1340. In relevant particular, the 1969 Act modified the preemption provision in the 1965 Act by replacing the original § 5(b) with a new § 5(b) that reads: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any ciga-rettes the packages of which are labeled in conformity with the provisions of this Act." The Supreme Court held in *Cipollone* that the petitioner's tort claims were preempted "to the extent that they rely on a state-law 'requirement or prohibition . . . with respect to . . . advertising or promo-tion.' Thus, insofar as [the petitioner's] claims . . . require a showing that respondents' post-1969 advertising or promo-tions should have included additional, or more clearly stated, warnings, those claims are pre-empted." *Id.* at 524.

In support of the Court's holding, a plurality of the Court reasoned that "[t]he phrase '[n]o requirement or prohibition'

sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules. As we noted in another context, '[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.' *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 247 (1959)." *Id.* at 521.

In assessing in this case the correctness of the judge's order of summary judgment for the defendants on the plaintiffs' claims of inadequate labeling and warning, the question, as we have said, *supra* at 459, is whether the word "requirements" in § 136v(b) of FIFRA refers to State tort law in addition to labeling and packaging mandates contained in State statutes and regulations. Because the "power of pre-emption lies within the discretion of Congress," the " 'touchstone' of pre-emption analysis" is an inquiry as to Congressional intent. *Cipollone, supra* at 516. *Archambault* v. *Archambault*, 407 Mass. 559, 564-565 (1980). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Commonwealth* v. *College Pro Painters (U.S.) Ltd.*, 418 Mass. 726, 728 (1994), quoting *Ingersoll-Rand Co.* v. *McClendon*, 498 U.S. 133, 138 (1990).

For our purpose, there is no significant difference between the statutory language considered in *Cipollone*[4] and FIFRA's § 136v(b).[5] It is of no consequence that the former refers to "requirement or prohibition" and the latter refers only to "requirements." As the Supreme Court notes, "it is

---

[4]"(b) No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act."

[5]"Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter."

the essence of the common-law to enforce duties that are either affirmative *requirements* or negative *prohibitions*" (emphasis in original). *Cipollone, supra* at 522. Also, as the Supreme Court observed, "regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Id.* at 521, quoting *San Diego Bldg. Trades Council v. Garmon, supra.* We conclude that Congress' intent in enacting § 136v(b) of FIFRA was to preclude States not only from mandating labeling and packaging requirements by means of statute or regulation, but also to preclude States from achieving a similar result through the establishment and application of pertinent tort law.

In arriving at that conclusion, we reject the plaintiffs' several arguments that the language and objectives of the statute considered in *Cipollone, supra,* and of FIFRA are sufficiently different to require a result in this case that differs from the result reached by the Supreme Court in *Cipollone.* We decline to follow the single post-*Cipollone* case of which we are aware that supports the plaintiffs' position. See *Couture v. Dow Chem. U.S.A.,* 804 F. Supp. 1298 (D. Mont. 1992). Instead, we join every Federal and State appellate court that has addressed this issue, including the United States Court of Appeals for the Ninth Circuit, which has within its jurisdiction the court that decided *Couture, supra,* in concluding that FIFRA's § 136v(b) preempts all State action pertaining to labeling requirements. See *Taylor AG Indus. v. Pure-Gro,* 54 F.3d 555, 561 (9th Cir. 1995); *Bice v. Leslie's Poolmart, Inc.,* 39 F.3d 887, 888 (8th Cir. 1994); *MacDonald v. Monsanto Co.,* 27 F.3d 1021, 1024 (5th Cir. 1994); *Worm v. American Cyanamid Co.,* 5 F.3d 744, 747 (4th Cir. 1993); *King v. E.I. dupont de Nemours & Co.,* 996 F.2d 1346, 1349 (1st Cir.), cert. dismissed, 510 U.S. 985 (1993); *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 371 (7th Cir. 1993); *Papas v. Upjohn Co.,* 985 F.2d 516, 518 (11th Cir.), cert. denied sub nom. *Papas v. Zoecon Corp.,* 510 U.S. 913 (1993); *Arkansas-Platte & Gulf Partnership v. Van Wa-*

*ters & Rogers, Inc.,* 981 F.2d 1177, 1179 (10th Cir.), cert. denied sub nom. *Arkansas-Platte & Gulf Partnership* v. *Dow Chem. Co.,* 510 U.S. 813 (1993); *Clubine* v. *American Cyanamid Co.,* 534 N.W.2d 385, 387 (Iowa 1995); *Jenkins* v. *Amchem Prods., Inc.,* 256 Kan. 602, 621 (1994), cert. denied, 116 S. Ct. 80 (1995); *Moody* v. *Chevron Chem. Co.,* 201 Mich. App. 232, 236-237 (1993); *Warner* v. *American Fluoride Corp.,* 204 A.D.2d 1, 12 (N.Y. 1994); *Quest Chem. Corp.* v. *Elam,* 898 S.W.2d 819, 820 (Tex. 1995); *All-Pure Chem. Co.* v. *White,* 127 Wash. 2d 1 (1995). We affirm the order entered in the Superior Court granting summary judgment to the defendants "as to as much of the Plaintiffs' complaint as is based on a theory of inadequate warning or labeling."[6]

*So ordered.*

---

[6]The judge's order denying summary judgment with respect to a possible claim that Pro Dip II is not suitable for home use and should be sold only to professionals is not before us and we do not address it. In her report pursuant to G. L. c. 231, § 111 (1994 ed.), and Mass. R. Civ. P. 64, 365 Mass. 831 (1974), the judge states in part the following: "All parties to this case have joined in a request that I report to the Appeals Court the correctness of my order which in effect accepted the defendants' preemption claim. I agree with the parties that in the circumstances of this case, (1) the reported question involves an important issue of statutory interpretation and application of preemption principles; and (2) so affects the merits of the controversy among the parties that the matter ought to be determined by the Appeals Court before any further proceedings in this court.

"On this second point, the parties concur that the basic substance of the plaintiffs' case is the claim which I have determined is preempted as a matter of Federal constitutional law; the remaining issue on which summary judgment was not granted may itself be resolved by summary judgment in the future, and in any event, in the parties' view, is not likely to afford the plaintiffs the full measure of relief they seek. . . .

"Accordingly, I hereby report to the Appeals Court for its determination the correctness of that portion of my order on the defendants' motion for summary judgment which allowed summary judgment to the defendants on grounds of preemption."