HAROLD D. EYL, AN INDIVIDUAL, AND CITY OF WISNER, A POLITICAL SUBDIVISION, APPELLEES, V. CIBA-GEIGY CORPORATION, A NEW YORK CORPORATION, AND NORTHEAST COOPERATIVE, A COOPERATIVE ASSOCIATION, APPELLANTS.

650 N.W.2d 744

Filed September 6, 2002. No. S-00-219.

William J. Brennan and Gerald L. Friedrichsen, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellants.

Susan E. Fieber, of Nolan, Olson, Hansen, Fieber, Lautenbaugh & Geren, for appellee City of Wisner.

David E. Copple and Jim K. McGough, of Copple, Rockey & McGough, P.C., for appellee Harold D. Eyl.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

A jury awarded appellee Harold D. Eyl a $2,146,000 verdict for injuries he sustained after he was exposed to the herbicide "Pramitol 5PS" while working for appellee City of Wisner. Pramitol is manufactured by appellant Ciba-Geigy Corporation, and the City of Wisner purchased the product from appellant Northeast Cooperative, a distributor. We granted the appellants' motion to bypass.

On appeal, the appellants argue that Eyl's claims are labeling based and preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 et seq. (1994). Eyl contends that FIFRA does not preempt his claims and asks us to overrule our decision in *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), *cert. denied* 522 U.S. 928, 118 S. Ct. 329, 139 L. Ed. 2d 255. In the alternative, Eyl argues that because he was a bystander who should have been warned that a substance had been applied, his claims are not labeling based and that FIFRA does not apply. We determine that FIFRA applies to preempt

Eyl's failure-to-warn claims and decline to overrule *Ackles*. Accordingly, we reverse, and remand with directions to dismiss.

## I. BACKGROUND

On April 9, 1993, Eyl was assigned to work at River Park in Wisner, Nebraska, where employees were setting posts and laying pea rock around playground equipment. On that morning, Donald H. Bode, an employee of the City of Wisner, applied Pramitol to prevent weeds in the playground area, which would then be covered by the pea rock. Pramitol requires water to activate it, and Bode testified that he usually wore rubber boots if it was wet.

Neither Ciba-Geigy nor Northeast Cooperative provided flags or signs that could be displayed to warn others that Pramitol had been applied in the area. A representative for Ciba-Geigy admitted that in addition to product labels, the company does send out additional pamphlets, brochures, leaflets, and news articles to suppliers or communities, but that the information must be consistent with the label.

Richard Brahmer, the general manager of Northeast Cooperative, testified that on some occasions, he would give customers information about a product that was not on the label. Brahmer stated that he was probably aware that people from the community would come in contact with Pramitol, but did not warn customers purchasing it to protect the application area. He testified that Northeast Cooperative sometimes prepared warning flags for customers of other products, because in 1996, a law was passed that required applicators to post warnings.

The label for Pramitol states, "DANGER":

> Corrosive — causes eye and skin damage. Do not get in eyes, on skin or clothing. Wash clothing after handling. Wear goggles or face shield and rubber gloves when handling. Harmful if swallowed, inhaled or absorbed through the skin. . . .
>
> If on skin: Remove contaminated clothing and immediately wash affected areas thoroughly with soap and water.

The material safety data sheet for Pramitol in effect on April 9, 1993, states that if skin contact occurs, the person should wash with soap and water and should remove contaminated clothing

and wash before reuse. The data sheet advises users to wear rubber gloves, waterproof boots, a long-sleeved shirt, long pants, and a hat. The data sheet also states that Pramitol can cause chemical burns to the skin and lists it as being "extremely irritating" to the skin. A later data sheet, issued in 1994, lists the same precautions, but omits the reference to chemical burns and states that Pramitol is "non-irritating" to the skin.

Eyl was present when the Pramitol was applied. Eyl did not read the label or the data sheet for the product because he did not use the product. The data sheet was available at a city warehouse where the employees worked, and boots were available for them to wear if needed. Eyl spent the day hauling pea rock to the playground area in a wheelbarrow, which required that he walk through grass and over the playground area. He testified that there was heavy fog and that the grass was wet. Puddles of water were also in the playground area.

Eyl was wearing steel-toe leather boots with oil-resistant soles. He testified that the boots became wet and stayed wet all morning. When he got home that evening, his boots, socks, and pant legs were wet. He wore the boots again for about 5 hours the next day. After April 10, 1993, the boots turned whitish in color and became stiff and brittle.

On April 11, 1993, Eyl's feet were red and sore. Eyl first saw his physician on April 13, and at that time, Eyl's feet and ankles were swollen, red, and hot. Eyl's feet later developed ulcers and remained painful. His condition did not improve, and Eyl was later seen by a dermatologist and was referred to the Mayo Clinic in Rochester, Minnesota. Because of the condition of his feet, Eyl is permanently disabled.

After Eyl presented his case, the appellants moved for a directed verdict, arguing that labeling-based state common-law failure-to-warn claims were preempted by FIFRA. The court stated that it did not view the case as a labeling-based claim that was preempted by FIFRA and denied the motion. The appellants then adduced evidence and renewed their motion for a directed verdict. The motion was overruled.

During the jury instruction conference, the court refused an instruction on design defects and stated that the case was a failure-to-warn case. The court submitted Eyl's claims to the

jury on negligent failure to warn against both appellants. The court submitted to the jury Eyl's strict liability claim for a warning defect against only Ciba-Geigy. The only claims submitted to the jury were claims based on a theory of failure to warn. The jury found for Eyl on all claims and awarded damages. The appellants moved for judgment notwithstanding the verdict. Among the issues raised, the appellants argued that Eyl's claims were preempted by FIFRA. The motions were overruled, and judgment was entered against the appellants.

## II. ASSIGNMENTS OF ERROR

The appellants assign, rephrased, that the district court erred in (1) failing to find that Eyl's failure-to-warn claims are preempted by FIFRA, (2) failing to grant their motion for a directed verdict because Eyl failed to present a prima facie case, (3) failing to find that Eyl was negligent as a matter of law in a manner that entitled them to a directed verdict, (4) allowing medical experts to testify regarding causation when the experts did not know the level and extent of Eyl's exposure to Pramitol, (5) failing to grant their motions for a mistrial, (6) allowing prejudicial evidence, (7) failing to instruct the jury on the allocation of damages, (8) instructing the jury on future medical expenses, (9) instructing the jury regarding the label approved by the Environmental Protection Agency (EPA), (10) instructing the jury about Eyl's factual claims, and (11) overruling their motions for judgment notwithstanding the verdict because the verdict was excessive.

## III. STANDARD OF REVIEW

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, where an issue should be decided as a matter of law. *Bowley v. W.S.A., Inc., ante* p. 6, 645 N.W.2d 512 (2002).

In order to sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001).

Statutory interpretation presents a question of law. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). When

reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *In re Grand Jury of Douglas Cty.*, 263 Neb. 981, 644 N.W.2d 858 (2002).

## IV. ANALYSIS

### 1. PREEMPTION

The appellants contend that FIFRA preempts Eyl's failure-to-warn claims because this court, and a large majority of other courts, have held that FIFRA preempts labeling-based common-law causes of action. See *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), *cert. denied* 522 U.S. 928, 118 S. Ct. 329, 139 L. Ed. 2d 255 (holding that FIFRA preempts labeling-based common-law claims and citing cases from other jurisdictions).

Eyl, however, asserts that the claims are not preempted because after our decision in *Ackles*, the EPA, in an amicus brief filed in *Etcheverry v. Tri-Ag*, 22 Cal. 4th 316, 993 P.2d 366, 93 Cal. Rptr. 2d 36 (2000), expressed the opinion that FIFRA does not preempt common-law claims. The Montana Supreme Court then adopted the EPA's position that FIFRA does not preempt common-law claims. *Sleath v. West Mont Home Health Services*, 304 Mont. 1, 16 P.3d 1042 (2000), *cert. denied sub nom. Dow AgroSciences LLC et al. v. Sleath et al.*, 534 U.S. 814, 122 S. Ct. 40, 151 L. Ed. 2d 13 (2001). Eyl further argues that even if FIFRA preempts failure-to-warn claims, it does so only for labeling-based claims in which there is a failure to warn the user of the product. Eyl argues that because he was a bystander, not a user, his claims are not labeling based.

### (a) Federal Preemption: General Background

 Federal preemption arises from the Supremacy Clause of the U.S. Constitution and is the concept that state laws that conflict with federal law are invalid. U.S. Const. art. VI, cl. 2. See Scott A. Smith and Duana Grage, *Federal Preemption of State Products Liability Actions*, 27 Wm. Mitchell L. Rev. 391 (2000) (citing sources). There are three varieties of preemption: express, implied, and conflict preemption. See *id.*

 Express preemption arises when Congress has explicitly declared federal legislation to have a preemptive effect. It can

also arise when a federal agency, acting within the scope of authority conferred upon it by Congress, has expressly declared an intent to preempt state law. *Id.* This case involves issues of express preemption.

### (b) FIFRA

Originally enacted in 1947, FIFRA establishes a comprehensive regulatory scheme for the packaging of chemicals such as pesticides and herbicides. See *Ackles, supra.* The EPA is the administrative agency in charge of setting appropriate regulations. Before an herbicide may be sold, it must be registered and its labeling approved by the EPA. *Id.*; § 136a(a). The review procedure requires that an applicant submit a proposed label to the EPA for approval. The label must address various concerns, including ingredients, directions for use, and adverse effects of the product. *Ackles, supra*; § 136a(c). " 'The objectives and purposes of FIFRA include the strengthening of federal standards, increasing EPA authority for their enforcement, and providing a comprehensive and uniform regulation of the labeling, sale, and use of pesticides.' " *Welchert v. American Cyanamid, Inc.,* 59 F.3d 69, 71 (8th Cir. 1995).

FIFRA, at 7 U.S.C. § 136(p), defines label and labeling as follows:

**(1) Label**

The term "label" means the written, printed, or graphic matter on, or attached to, the pesticide or device or any of its containers or wrappers.

**(2) Labeling**

The term "labeling" means all labels and all other written, printed, or graphic matter—

(A) accompanying the pesticide or device at any time; or

(B) to which reference is made on the label or in literature accompanying the pesticide or device . . . .

FIFRA contains specific preemption language for labeling-based claims, yet it also allows the states to regulate the use of a product. Section 136v provides in part:

**(a) In general**

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to

the extent the regulation does not permit any sale or use prohibited by [FIFRA].

**(b) Uniformity**

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA].

### (c) *Cipollone, Medtronic, Inc.*, and *Ackles*

The U.S. Supreme Court has never addressed the issue whether FIFRA preempts common-law causes of action. The Court, however, decided two cases involving other statutes that courts rely on when deciding issues regarding preemption under FIFRA.

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992), the Court addressed the issue whether the Federal Cigarette Labeling and Advertising Act (1965 Act), as amended by the Public Health Cigarette Smoking Act of 1969 (1969 Act), preempted common-law claims—including design defect and failure-to-warn claims. The 1965 Act provided that "[n]o statement relating to smoking and health shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with the provision of this chapter." 15 U.S.C. § 1334(b) (Supp. V 1965-69). The 1969 Act's preemption clause provides: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this chapter." 15 U.S.C. § 1334(b) (2000).

Concerning the 1965 Act, the Court stated that Congress spoke precisely and narrowly by using the term "statement." Thus, the Court determined that on its face, the preemption section of the 1965 Act prohibited only rulemaking bodies from mandating particular cautionary statements on cigarette labels. In determining the preemptive effect of the 1969 Act—a plurality of the Court held that unlike the 1965 Act—the 1969 Act preempted state common-law failure-to-warn claims that were based on advertising. The plurality's focus was on the terms "requirement or prohibition" in the 1969 Act. The plurality stated:

> Compared to its predecessor in the 1965 Act, the plain language of the pre-emption provision in the 1969 Act is

much broader. First, the later Act bars not simply "statement[s]" but rather "requirement[s] or prohibition[s] . . . imposed under State law." Second, the later Act reaches beyond statements "in the advertising" to obligations "with respect to the advertising or promotion" of cigarettes.

*Cipollone*, 505 U.S. at 520.

The plurality rejected an argument that common-law damages actions do not impose "requirement[s] or prohibition[s]," stating that this argument was at odds with the plain language of the 1969 Act and the general understanding of common-law damages actions. The Court reasoned:

> The phrase "[n]o requirement or prohibition" sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules. As we noted in another context, "[state] regulation can be as effectively exerted through an award of damages as through some form of preventive relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."

505 U.S. at 521, citing *San Diego Unions v. Garmon*, 359 U.S. 236, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959).

The plurality also rejected an argument that the phrase "imposed under State law" excluded common-law actions, stating that it previously recognized that "State law" included common-law rules of liability. The Court noted that the preemption clause did not preempt all common law, but only those actions predicated on a theory that necessarily interferes with the 1969 Act. The Court determined that the plaintiff's failure-to-warn claim was preempted because it was specifically at odds with the labeling requirement of the 1969 Act.

After the decision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992), every federal court of appeals to address the issue has held that common-law labeling-based failure-to-warn claims brought against manufacturers of pesticides or herbicides are preempted by FIFRA. See, *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), *cert. denied* 522 U.S. 928, 118 S. Ct. 329, 139 L. Ed. 2d 255 (citing *Welchert v. American Cyanamid, Inc.*, 59 F.3d 69 (8th Cir. 1995);

*Taylor AG Industries v. Pure-Gro*, 54 F.3d 555 (9th Cir. 1995); *Lowe v. Sporicidin Intern.*, 47 F.3d 124 (4th Cir. 1995); *Bice v. Leslie's Poolmart, Inc.*, 39 F.3d 887 (8th Cir. 1994); *MacDonald v. Monsanto Co.*, 27 F.3d 1021 (5th Cir. 1994); *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir. 1993); *King v. E.I. Dupont De Nemours and Co.*, 996 F.2d 1346 (1st Cir. 1993), *cert. dismissed* 510 U.S. 985, 114 S. Ct. 490, 126 L. Ed. 2d 440; *Shaw v. Dow Brands, Inc.*, 994 F.2d 364 (7th Cir. 1993); *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993), *cert. denied* 510 U.S. 913, 114 S. Ct. 300, 126 L. Ed. 2d 248; *Arkansas-Platte & Gulf v. Van Waters & Rogers*, 981 F.2d 1177 (10th Cir. 1993), *cert. denied* 510 U.S. 813, 114 S. Ct. 60, 126 L. Ed. 2d 30).

In addition, numerous state appellate courts hold that FIFRA preempts labeling-based common-law causes of action. See, e.g., *Ackles, supra*; *Schuver v. E.I. Du Pont de Nemours & Co.*, 546 N.W.2d 610 (Iowa 1996), *cert. denied* 519 U.S. 910, 117 S. Ct. 274, 136 L. Ed. 2d 197; *Hochberg v. Zoecon Corp.*, 421 Mass. 456, 657 N.E.2d 1263 (1995); *Quest Chemical Corp. v. Elam*, 898 S.W.2d 819 (Tex. 1995); *All-Pure Chemical Co. v. White*, 127 Wash. 2d 1, 896 P.2d 697 (1995); *Jenkins v. Amchem Products, Inc.*, 256 Kan. 602, 886 P.2d 869 (1994), *cert. denied* 516 U.S. 820, 116 S. Ct. 80, 133 L. Ed. 2d 38 (1995).

After the decisions of these courts, the U.S. Supreme Court, in *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996), revisited its decision in *Cipollone*. In *Medtronic, Inc.*, the plaintiff, who was injured when her pacemaker failed, sought to recover damages under Florida common law. The manufacturer contended that the claims were preempted under the Medical Device Amendments of 1976 (MDA).

Under the MDA, the Food and Drug Administration (FDA) prohibits marketing certain classes of medical devices, including pacemakers, without assurances that the devices are safe and effective. This requirement subjects a company to a rigorous premarket approval process. *Medtronic, Inc., supra.* See 21 U.S.C. § 360e (1994). But the MDA provided a grandfather clause that allowed existing devices to remain on the market during the approval process. The MDA also allowed devices that were substantially equivalent to preexisting devices to avoid the rigorous approval process by filing a notice and completing a relatively

simple approval process referred to as a " '§ 510(k) process.' " *Medtronic, Inc.*, 518 U.S. at 478. See 21 U.S.C. § 360(b). The pacemaker at issue in *Medtronic, Inc.* was approved under this "§ 510(k) process."

The MDA provides in part:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a) (2000). The Court's plurality held that the MDA generally does not preempt common-law damages claims.

The Court focused on the term "requirement" in the MDA. The plurality reasoned that

> if Congress intended to preclude all common-law causes of action, it chose a singularly odd word with which to do it. The statute would have achieved an identical result, for instance, if it had precluded any "remedy" under state law relating to medical devices. "Requirement" appears to presume that the State is imposing a specific duty upon the manufacturer, and although we have on prior occasions concluded that a statute pre-empting certain state "requirements" could also pre-empt common-law damages claims, see *Cipollone*, 505 U.S., at 521-522 (opinion of STEVENS, J.), that statute did not sweep nearly as broadly as Medtronic would have us believe that this statute does.

*Medtronic, Inc.*, 518 U.S. at 487-88.

The plurality noted that the act at issue in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992), prohibited state requirements that were "based on smoking and health" and that common-law claims not based on smoking and health were not preempted. Concerning the MDA in *Medtronic, Inc.*, however, the plurality determined that an examination of the entire MDA makes it apparent that the term " 'requirements,' " as used throughout, "is linked with language suggesting that its focus is device-specific enactments of positive

law by legislative or administrative bodies, not the application of general rules of common law by judges and juries." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 489, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996). See, also, *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), *cert. denied* 522 U.S. 928, 118 S. Ct. 329, 139 L. Ed. 2d 255 (discussing *Medtronic, Inc.*).

In *Ackles*, this court held that FIFRA preempted common-law failure-to-warn claims. The plaintiff, a mail carrier, was delivering mail when he became exposed to an insecticide that was being sprayed on an adjacent cornfield. He then sought damages under theories of negligence and strict liability based on a failure of the manufacturer to warn him of the danger.

We addressed both *Cipollone* and *Medtronic, Inc.* and stated: "[W]hile at first blush *Medtronic, Inc.* appears to retreat from the preemption analysis put forth in *Cipollone*, it was the separate and distinct statutes that were involved in each case that were the determining factor." *Ackles*, 252 Neb. at 281, 561 N.W.2d at 578. We then noted other courts which held that the preemption language employed in FIFRA was more similar to the statutory language in *Cipollone* than the statutory language in *Medtronic, Inc. Ackles, supra* (citing *Lewis v. American Cyanamid Co.*, 294 N.J. Super. 53, 682 A.2d 724 (1996), *aff'd as modified* 155 N.J. 544, 715 A.2d 967 (1998), and *Grenier v. Vermont Log Bldgs., Inc.*, 96 F.3d 559 (1st Cir. 1996)). See, also, S. Douglas Fish, Note, *In Defense of FIFRA Preemption of Failure to Warn Claims*, 12 J. Nat. Resources & Env. Law 123 (1996-97) (discussing *Medtronic, Inc.*). In particular, we relied on the following reasoning from a New Jersey case:

"[L]ike the preemption clause at issue in *Cipollone* and unlike that in *Medtronic*, the preemption provision of FIFRA is precise and explicit; *i.e.*, a State 'shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.' Furthermore, FIFRA, like the *Cipollone* statutes, leaves unconstrained all state common law causes of action for defective products except those based on inadequate labels. Finally, FIFRA has no escape clauses like the 'grandfathering' and 'substantially equivalent' provisions of MDA. The statute and regulations provide that

substantially all pesticides are subject to extensive review by the EPA, and the EPA prescribes precise content for pesticide labels . . . ."

*Ackles*, 252 Neb. at 281-82, 561 N.W.2d at 578, quoting *Lewis v. American Cyanamid Co., supra.*

### (d) Decisions Since *Ackles*

Since our decision in *Ackles*, a majority of courts continue to hold that FIFRA preempts labeling-based failure-to-warn claims. See, e.g., *Netland v. Hess & Clark, Inc.*, 284 F.3d 895 (8th Cir. 2002) (rehearing and rehearing en banc denied); *Grenier, supra*; *Arnold v. Dow Chemical Co.*, 91 Cal. App. 4th 698, 110 Cal. Rptr. 2d 722 (2001); *Etcheverry v. Tri-Ag*, 22 Cal. 4th 316, 993 P.2d 366, 93 Cal. Rptr. 2d 36 (2000); *Ackerman v. American Cyanamid Co.*, 586 N.W.2d 208 (Iowa 1998); *Didier v. Drexel Chem. Co.*, 86 Wash. App. 795, 938 P.2d 364 (1997); *Lewis, supra.*

Since *Ackles*, two courts have held that failure-to-warn claims are not preempted by FIFRA. *Sleath v. West Mont Home Health Services*, 304 Mont. 1, 16 P.3d 1042 (2000), *cert. denied sub nom. Dow AgroSciences LLC et al. v. Sleath et al.*, 534 U.S. 814, 122 S. Ct. 40, 151 L. Ed. 2d 13 (2001); *Brown v. Chas. H. Lilly Co.*, 161 Or. App. 402, 985 P.2d 846 (1999), *review denied* 330 Or. 138, 6 P.3d 1098 (2000).

### 2. EYL'S ARGUMENTS

#### (a) Preemption

Eyl asks this court to reverse our decision in *Ackles v. Luttrell*, 252 Neb. 273, 561 N.W.2d 573 (1997), *cert. denied* 522 U.S. 928, 118 S. Ct. 329, 139 L. Ed. 2d 255, and determine that FIFRA does not preempt common-law failure-to-warn claims because of the reasoning of *Sleath, supra.* He argues that under *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996), FIFRA does not preempt failure-to-warn claims and asks this court to adopt the position of the EPA that was set forth in an amicus brief filed in *Etcheverry, supra.*

In *Sleath, supra*, the Montana Supreme Court overruled a previous case in which it held that common-law failure-to-warn claims were preempted by FIFRA. *Sleath, supra*) (overruling *McAlpine v. Rhône-Poulenc Ag. Co.*, 285 Mont. 224, 947 P.2d

474 (1997)). In reaching this determination, the court considered the amicus brief filed by the EPA in *Etcheverry, supra*, in which the EPA argued that FIFRA did not preempt state law claims. The court determined that it should consider the government's position on the issue and gave it deference. The court also discussed *Medtronic, Inc.*, which it had not previously considered, and concluded that in the light of that case, FIFRA did not preempt state law claims for damages.

We decline to adopt the position taken by the Montana Supreme Court. First, we have already considered the effect of *Medtronic, Inc.* on the issue of FIFRA preemption in *Ackles* and determined that FIFRA preempts failure-to-warn claims.

Second, we give no deference to the EPA's position in the amicus brief filed in *Etcheverry*. The *Etcheverry* brief was written for that specific case. The EPA did not file an amicus brief with this court in this case. Nor have we found—outside of *Etcheverry*—a similar brief filed by the EPA in any of the numerous other cases which have discussed FIFRA preemption. In addition, the record is silent whether the view expressed in the *Etcheverry* brief was an EPA official policy statement for all cases and if the EPA still adheres to that view. Further, we note that in *Etcheverry*, the California Supreme Court did not adopt the EPA's arguments. See *Etcheverry, supra*. Under these circumstances, we give no deference to the position taken in the *Etcheverry* brief.

Finally, the Eighth Circuit Court of Appeals recently considered and rejected the same arguments asserted by Eyl. *Netland v. Hess & Clark, Inc.*, 284 F.3d 895 (8th Cir. 2002) (rehearing and rehearing en banc denied). In *Netland*, the appellant requested the Eighth Circuit to overrule precedent holding that FIFRA preempts state common-law failure-to-warn claims based on *Medtronic, Inc., supra, Sleath, supra*, and *Brown, supra*, and on the EPA's brief in *Etcheverry, supra*. The Eighth Circuit panel stated that it would not overrule a prior decision unless it did so en banc. The plaintiff in *Netland* then sought rehearing en banc, which was denied. The continuing position of the Eighth Circuit is that state common-law failure-to-warn claims are preempted by FIFRA.

■ The overwhelming majority of jurisdictions hold that FIFRA preempts state common-law failure-to-warn claims. We agreed with this position in *Ackles, supra*. We decline to now

overrule *Ackles*. We hold that Eyl's failure-to-warn claims are preempted by FIFRA.

(b) Argument That Eyl's Claims Are Not Labeling Based

Eyl contends that Ciba-Geigy should have provided notice of the dangers of Pramitol to the general public through "signs, flags, newspaper notices, etc." Reply brief for appellee Eyl at 14. He argues that FIFRA applies to preempt only claims that are labeling based and directed to the actual user of a product. He argues that his claim was not labeling based because he was a bystander and was seeking damages for failure to warn that a chemical had been applied instead of basing his claim on the existing Pramitol label. For purposes of this opinion, we assume, without deciding, that Eyl, as an employee of the applicator, was a bystander.

Whether a particular form of warning comes within the definitions of "label" and "labeling" set forth in 7 U.S.C. § 136(p) is a matter of statutory interpretation. In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Application No. C-1889, ante* p. 167, 647 N.W.2d 45 (2002). If the language of a statute is clear, the words of such statute are the end of any judicial inquiry regarding its meaning. *Gracey v. Zwonechek*, 263 Neb. 796, 643 N.W.2d 381 (2002). The question is whether warning flags, posters, or signs supplied by the manufacturer and aimed at warning that a pesticide has been applied or of its dangers are part of the label or labeling under FIFRA. We conclude that they are.

In cases where the plaintiff claims that the lack of point-of-sale signs or consumer notices are not related to labeling and packaging, the overwhelming majority of courts hold that FIFRA preempts the claims. *Taylor AG Industries v. Pure-Gro*, 54 F.3d 555 (9th Cir. 1995); *Worm v. American Cyanamid Co.*, 5 F.3d 744 (4th Cir. 1993); *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993), *cert. denied* 510 U.S. 913, 114 S. Ct. 300, 126 L. Ed. 2d 248; *Dow Chemical Co. v. Ebling*, 723 N.E.2d 881 (Ind. App. 2000) (*Ebling I*), *vacated in part on other grounds* 753 N.E.2d 633 (Ind. 2001); *Jenkins v. Amchem Products, Inc.*, 256 Kan.

602, 886 P.2d 869 (1994), *cert. denied* 516 U.S. 820, 116 S. Ct. 80, 133 L. Ed. 2d 38 (1995); *Hopkins v. American Cyanamid Co.*, 666 So. 2d 615 (La. 1996); *Wadlington v. Miles, Inc.*, 922 S.W.2d 520 (Tenn. App. 1995); *Goodwin v. Bacon*, 127 Wash. 2d 50, 896 P.2d 673 (1995). See, *Kuiper v. American Cyanamid Co.*, 131 F.3d 656 (7th Cir. 1997), *cert. denied* 523 U.S. 1137, 118 S. Ct. 1839, 140 L. Ed. 2d 1090 (1998) (alleged misrepresentation in advertising separate from label is labeling based when it reiterates information on label); *Andrus v. AgrEvo USA Co.*, 178 F.3d 395 (5th Cir. 1999) (agreeing with *Kuiper, supra*).

In *Papas, supra*, a worker at a humane society suffered injuries after applying a pesticide to dogs at his workplace. See *Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir. 1991), *vacated and remanded on other grounds* 505 U.S. 1215, 112 S. Ct. 3020, 120 L. Ed. 2d 892 (1992). After remand from the U.S. Supreme Court to consider the case in the light of *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992), the Eleventh Circuit held that point-of-sale signs, consumer notices, or other informational materials were labeling based. In addressing the issue, the court stated:

> Appellants urge us to hold that their warning claims "unrelated to labeling and packaging" are not pre-empted by section 136v. They contend that because the language of 136v refers only to "labeling or packaging," the section does not pre-empt failure to warn claims based on point-of-sale signs, consumer notices, or other informational materials that are "unrelated" to labeling and packaging. But any claims that point-of-sale signs, consumer notices, or other informational materials failed adequately to warn the plaintiff[s] necessarily challenge the adequacy of the warnings provided on the product's labeling or packaging. If a pesticide manufacturer places EPA-approved warnings on the label and packaging of its product, its duty to warn is satisfied, and the adequate warning issue ends. Plaintiffs may not interfere with the FIFRA scheme by bringing a common law action alleging the inadequacy of, for example, point-of-sale signs. Because claims challenging the adequacy of warnings on materials other than the label or package of a product necessarily imply that the labeling

and packaging failed to warn the user, we conclude that these claims are also pre-empted by FIFRA.

*Papas*, 985 F.2d at 519. See, also, *Taylor AG Industries, supra*; *Ebling I*; *Hopkins, supra*; *Wadlington, supra*; *Goodwin, supra*.

Shortly after *Papas* was decided by the 11th Circuit, the 4th Circuit agreed, stating:

> To allow the [plaintiffs] to argue that the warning language which appears on point-of-sale or other promotional material is inadequate when that language is identical to that approved by the EPA would in effect allow the establishment of an additional or different state law requirement concerning adequate warning language.

*Worm*, 5 F.3d at 748. See, also, *Jenkins, supra* (agreeing with *Papas, supra*, and *Worm, supra*).

Agreeing with the view taken in *Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993), *cert. denied* 510 U.S. 913, 114 S. Ct. 300, 126 L. Ed. 2d 248, and similar cases about point-of-sale signs and similar devices, the Court of Appeals of Indiana further addressed the plain language of § 136(p). *Ebling I*. In *Ebling I*, an applicator sprayed an apartment with a pesticide before, and possibly for a short time after, the plaintiffs, a family, moved in. The plaintiffs were not provided with labeling information regarding the pesticide before they were exposed. The children later developed seizure disorders, and the plaintiffs filed suit against the applicator and the manufacturer.

On appeal, the plaintiffs argued that the defendants owed a common-law duty to distribute additional materials warning of the product to people whose homes were being sprayed. The Indiana Court of Appeals rejected this argument because of the definitions of "label" and "labeling" contained in § 136(p). The court noted that FIFRA has a broad definition of labeling that does not require the labeling materials to be affixed to the pesticide. Applying the language of § 136(p), the court stated:

> Thus, any written information that a pesticide registrant disseminates with a pesticide is considered "labeling" under FIFRA, and any obligation placed upon a registrant in this regard is necessarily a labeling requirement. From this language, it is clear that Congress intended to preempt state common law actions that would impose requirements

on a registrant to disseminate additional written matter with its product, regardless of whether this matter was identical to the EPA-approved labeling information. *Ebling I*, 723 N.E.2d at 897. The court then stated its agreement with *Papas, supra,* and similar cases. The court held that FIFRA preempted claims against both the manufacturer and the applicator. On further review, the Supreme Court of Indiana reversed the decision regarding the applicator, but summarily affirmed the decision regarding the manufacturer. *Dow Chemical Co. v. Ebling*, 753 N.E.2d 633 (Ind. 2001) (*Ebling II*).

Eyl's argument that Ciba-Geigy should have provided notice of the dangers of Pramitol to the general public through "signs, flags, newspaper notices, etc." is off the mark. As previously noted, the overwhelming majority of jurisdictions hold that these types of warnings are labeling based. Under § 136(p), labeling means all labels and all other written, printed, or graphic matter accompanying the pesticide or device at any time. A warning flag or sign in this case consists of some form of written or graphic material provided by the manufacturer that will accompany the product at some time. This alone meets the plain language of "labeling" under § 136(p). The definition of "label" is also met, because additional warning materials or devices that a manufacturer provides would need to be "attached to, the pesticide or device or any of its containers or wrappers." § 136(p)(1). In addition, Eyl argues that the public should have been warned of Pramitol's dangers. This, however, would require some type of printed information. In that case, the warning would then have to incorporate language from the direct product label and information about the warning system would need to be incorporated into the directions for use on the label— information that also falls under the statutory definition of "label" and "labeling."

Further, considerations such as (1) whether warning devices such as flags are needed, (2) what they should look like, (3) what printed material they should contain, and (4) how they should be used and for how long are all factors that would affect the types of warnings provided from the manufacturer and are properly part of the EPA review process. The purpose of FIFRA preemption is to create a uniform system of labeling across the

country. Requiring manufacturers to provide additional warning devices to some states and not to others frustrates the goal of FIFRA preemption.

But Eyl argues that flags and other such warning devices are not labeling based and thus not preempted. He relies on cases dealing with ordinances affecting applicators. He argues that if an applicator can be required to provide warning flags, then a manufacturer should also be required to provide that type of warning.

Eyl's reasoning ignores the reason why a warning provided by an applicator—as opposed to a manufacturer—is not labeling based. Although FIFRA prevents states from implementing additional or different labeling requirements on manufacturers under § 136v(b), it specifically allows states to regulate the "use" of pesticides by applicators under § 136v(a). In applicator cases, it is the applicator, not the manufacturer, who is responsible for providing the warning. The manufacturer is not required to take any action whatsoever in providing the warning devices. Nor is the manufacturer required to alter the labeling. As a result, when an applicator is required to provide label information, the labeling approved by the EPA and provided by the manufacturer is unaffected and the regulation is simply a regulation on the use of the product under § 136v(a). But if a *manufacturer* is required to provide items such as warning flags, then the labeling of the product is involved, which labeling requirement is preempted by FIFRA. The applicator cases make this point clear.

In *Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 111 S. Ct. 2476, 115 L. Ed. 2d 532 (1991), an applicator case, the U.S. Supreme Court determined that an ordinance that required applicators to obtain a permit before application of certain pesticides and to place placards containing notice of the pesticide and label information was not preempted by FIFRA. In reaching this conclusion, the Court relied specifically on the language in § 136v(a). Section 136v(a) provides that states may regulate the sale or use of pesticides so long as the state regulation does not permit a sale or use prohibited by FIFRA. The Court specifically noted that FIFRA does not expressly supersede local regulation of pesticide use. The Court did not base its reasoning on a definition of "labeling." Instead, the Court recognized that the ability to regulate use

does not give states any greater power over their ability to regulate labeling. The Court stated:

> The specific grant of authority in § 136v(a) consequently does not serve to hand back to the States powers that the statute had impliedly usurped. Rather, it acts to ensure that the States could continue to regulate use and sales even where, such as with regard to the banning of mislabeled products, a narrow pre-emptive overlap might occur.

*Mortier*, 501 U.S. at 614. Another court describes the difference by stating, "Labeling regulation represents a subset of use regulation. *Mortier*'s permissible overlap allows states to ban EPA-registered pesticides . . . . The explicit language of section 136v(b), however, completely preempts any state regulation of the labeling itself." *Goodwin v. Bacon*, 127 Wash. 2d 50, 65, 896 P.2d 673, 681 (1995) (holding that claims based on point-of-sale signs are preempted).

The difference between regulating the use of a product by requiring applicators to provide warnings and a preempted labeling-based claim when a manufacturer is required to provide warnings is illustrated in *Ebling I* and *Ebling II*. In *Ebling I*, the Indiana Court of Appeals held that failure-to-warn claims based on a lack of notice to nonusers were preempted against both the manufacturer and the applicator. The Indiana Supreme Court granted review and reversed the conclusion of preemption for the applicator but affirmed for the manufacturer. In reaching the conclusion that the imposition of a duty to warn on an applicator is not preempted, the court made note of § 136v(a), which allows State regulation of pesticide use. The court noted:

> While FIFRA requires pesticide manufacturers to affix an approved label to their product in order to sell it, applicators, either commercial or private, are not required to label anything but, as with members of the general public, applicators are prohibited from detaching, altering, defacing, or destroying the label affixed to the pesticide by the manufacturer. 7 U.S.C. § 136j(2). The law is fairly settled that when a pesticide *manufacturer* "places EPA-approved warnings on the label and packaging of its products, its duty to warn is satisfied, and the adequate warning issue ends." *Papas v. Upjohn Co.*, 985 F.2d 516, 519 (11th Cir.1993). Because of the

absence of an affirmative FIFRA labeling requirement for *applicators*, however, we find that the alleged state tort law duty imposed upon applicators to convey the information in the EPA-approved warnings to persons placed at risk does not constitute a requirement additional to or different from those imposed by FIFRA.

(Emphasis in original.) *Ebling II*, 753 N.E.2d at 639.

The court then stated: "From *Mortier*, we discern that, like a state or local regulatory scheme that requires permits and notice to the non-user consumer/bystander and imposes penalties, the imposition of a duty to warn on applicators is not preempted by FIFRA." *Ebling II*, 753 N.E.2d at 640. The court, however, summarily affirmed that the claims against the manufacturer were preempted. See, also, *Mann v. H.W. Andersen Products, Inc.*, 246 A.D.2d 68, 676 N.Y.S.2d 658 (1998) (claims by deformed child brought against mother's employer, where employer's use of pesticide exposed mother to pesticide, were not preempted, but claims against manufacturer were preempted).

The other applicator cases that Eyl relies on do not hold that a failure-to-warn claim brought against a *manufacturer* for failure to place devices such as warning flags is not a labeling-based claim. Instead, these cases address the narrow issue about whether such claims when brought against *applicators* are a requirement affecting the use of a product instead of being a labeling-based action. See, e.g., *New York State Pesticide Coalition v. Jorling*, 874 F.2d 115 (2d Cir. 1989).

In most of the cases cited by Eyl, applicators of pesticides or herbicides were being regulated. If an ordinance requires an applicator to provide warnings that a product has been applied, the product's use under § 136v(a) is regulated without imposing additional labeling requirements on the manufacturer that are preempted under § 136v(b). Instead of imposing an additional burden on the manufacturer, and thus requiring the manufacturer to violate FIFRA, the applicators are simply being required in their use of the product to relay information to additional people. But if a manufacturer is required to provide additional warning materials, such as flags, signs, advertisements, or other notices, the manufacturer is being required to change the label of the product: This must be approved by the

EPA, and such a requirement on the manufacturer is preempted by FIFRA.

Eyl also relies on a federal trial court opinion holding that the Cigarette Labeling and Advertising Act, the 1965 Act discussed earlier, does not preempt failure-to-warn claims that are made by a bystander who was injured from inhaling secondhand smoke. *Wolpin v. Phillip Morris, Inc.*, 974 F. Supp. 1465 (S.D. Fla. 1997). In addition, he cites *Chemical Specialties Mfrs. Ass'n, Inc. v. Allenby*, 958 F.2d 941 (9th Cir. 1992), and *Macrie v. SDS Biotech Corp.*, 267 N.J. Super. 34, 630 A.2d 805 (1993). We find these cases unpersuasive and contrary to the majority of FIFRA preemption cases that address the issue whether FIFRA preempts failure to warn claims that are not directly based on the language of the label. See *Ebling I* (disagreeing with *Macrie, supra*).

In sum, under FIFRA, the inclusion of warning flags or other such materials encompasses the concept of providing information to others that there are adverse effects associated with the product. Requiring a manufacturer to provide warning signs, flags, or other devices constitutes "labeling" under the plain language of § 136(p). Claims challenging the adequacy of warnings on materials other than the direct label or package of a product necessarily infer that the labeling and packaging failed to warn. Because the manufacturer and distributor would be in no position to actually place warnings on the sites where products were being applied, the only manner in which the manufacturer could prevent liability would be to add the warning devices as part of the labeling and packaging. See *All-Pure Chemical Co. v. White*, 127 Wash. 2d 1, 896 P.2d 697 (1995).

*Papas v. Upjohn Co.*, 985 F.2d 516 (11th Cir. 1993), *cert. denied* 510 U.S. 913, 114 S. Ct. 300, 126 L. Ed. 2d 248, and the overwhelming majority of jurisdictions that have considered this issue agree that claims based on the lack of point-of-sale signs and other such devices are labeling based and are preempted by FIFRA. Even assuming that Eyl, as an employee of the City of Wisner, was a bystander, the status of a plaintiff as a bystander does not have an effect on this determination. The effect of the plain language of § 136(p) remains the same: Labeling-based failure-to-warn claims against manufacturers are preempted. The plaintiff's status makes no difference in the determination. See

*Ebling I* and *Ebling II*. We hold that Eyl's claims are labeling-based failure-to-warn claims that are preempted by FIFRA.

### (c) Application of Preemption to Distributors

After this case was submitted to this court following argument, we ordered the parties to provide supplemental briefs regarding whether a failure-to-warn claim is preempted when brought against a distributor. The U.S. Court of Appeals for the Ninth Circuit determined that when a "distributor's liability is essentially predicated upon the language in the manufacturer's label, we apply FIFRA's preemption provision equally to manufacturers and distributors." *Taylor AG Industries v. Pure-Gro*, 54 F.3d 555, 562 (9th Cir. 1995). Other jurisdictions generally assume that FIFRA preempts state law failure-to-warn claims against both manufacturers and distributors. See, e.g., *Arnold v. Dow Chemical Co.*, 91 Cal. App. 4th 698, 110 Cal. Rptr. 2d 722 (2001); *Hughes v. Tennessee Seeds of Brownsville, Inc.*, 970 S.W.2d 471 (Tenn. App. 1997). We agree.

■ Eyl's failure-to-warn claims are labeling based. Under FIFRA, a manufacturer or distributor cannot change a label. Because Eyl predicates his failure-to-warn claims on the quality of the warning, his claims are preempted against both the manufacturer and the distributor.

### V. CONCLUSION

We determine that Eyl's common-law failure-to-warn claims are labeling based and preempted by FIFRA. The only claims submitted to the jury in this case were Eyl's negligence and strict liability failure-to-warn claims. The court did not submit any nonpreempted claims to the jury, and Eyl does not cross-appeal the trial court's decision to not submit a design defect claim to the jury. We hold that Eyl's claims are preempted and that the district court erred in failing to sustain the appellants' motions for a directed verdict and judgment notwithstanding the verdict. We reverse, and remand with directions to dismiss. Because we reverse, and remand with directions to dismiss, we do not address Eyl's remaining assignments of error.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.